**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Deborah J. Piazza*
*Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
Michael Z. Brownstein, Esq.
smarkowitz@tarterkrinsky.com
mbrownstein@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

In re:                          :

                                 :    Chapter 7

PURSUIT HOLDINGS (NY), LLC    :

*fka* Pursuit Holdings, LLC          :    Case No.: 18-12738 (MG)

                Debtor.   :

                                 :

------------------------------------------------------------ x

## CHAPTER 7 TRUSTEE'S MOTION PURSUANT TO FED. R. BANKR. P. 9019(a) FOR APPROVAL OF STIPULATION OF SETTLEMENT

**TO:   THE HONORABLE MARTIN GLENN
       UNITED STATES BANKRUPTCY JUDGE**

Deborah J. Piazza (the "Trustee"), solely in her capacity as trustee of the estate of Pursuit

Holdings (NY), LLC ("Pursuit" or the "Debtor"), hereby moves this Court (the "Motion") for the

entry of an order (the "Order") pursuant to Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") approving a settlement agreement dated January 7, 2019

(the "Agreement") annexed hereto as **Exhibit "A"** between the Trustee, on the one hand, and

Michael I. Knopf, Norma Knopf and Delphi Capital Management LLC (the "Knopfs") on the

other. In support of the Motion, the Trustee respectfully states as follows:

# PRELIMINARY STATEMENT

1.     By this Motion, the Trustee seeks approval of the Agreement between the Trustee and the Knopfs (collectively, the "Parties") which, if approved, would, in consideration of the Knopfs' payment to the Trustee of $200,000.00 in cash and a waiver of multi-million dollars in claims against the estate, (i) resolve possible future disputes between the Parties, (ii) provide a certain recovery to the Debtor's unsecured creditors, (iii) further the Trustee's goal of achieving finality in this case within a reasonably short period of time and (iv) preserve other parties' rights in respect of extensive litigation that has been pending in the state and federal court for a number of years.

2.     After substantial review of various documents and meetings and extensive discussions with the Knopfs' counsel and the Debtor's principal and the Debtor's counsel, the Trustee has negotiated the Agreement that is presented to this Court by this Motion. In short, the Agreement will provide the estate with $200,000.00 to pay timely filed and allowed unsecured claims and administrative expenses in connection with an estate where it appears likely the only assets are (i) real estate in which there is no equity (assuming the Knopfs' judgment cannot be vacated or overturned on appeal) and (ii) causes of actions and/or offsets that are tenuous at best.

3.     In short, if the Agreement is approved, the Trustee estimates that unsecured creditors holding timely filed and allowed unsecured claims will receive a distribution in respect of their general unsecured claims from this recovery,[1] subject to ongoing administrative expenses in the estate related to, among other things, claims reconciliation.  On the other hand, if the Agreement is not approved, the Trustee will be left with the option of either abandoning all assets of the estate or incurring substantial additional estate resources and administrative legal

---

[1] The Debtor's schedules presumably reflect a good faith estimate of the total amount of valid unsecured claims the Debtor may owe excluding (a) undetermined tax liabilities, and (b) all amounts owed to the Debtor's principal and the companies he manages. This also does not include any administrative expenses of chapter 11 or chapter 7 case.

fees and costs to attempt to vacate the Knopfs' judgment or obtain reversal of the judgment through the appellate process. In other words, absent a settlement, the possibility exists in which the Trustee's only choice would be to pursue expensive litigation, which the Trustee, based upon her investigation has determined has a low likelihood of success.

4.     The Trustee respectfully requests that this Court approve the relief requested in the Motion, thereby allowing the Trustee to proceed with a favorable settlement that will inure to the benefit of the Debtor's estate and all of its constituents in this two-party dispute.

## JURISDICTION AND VENUE

5.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

6.     The statutory predicates for the relief requested herein is Bankruptcy Rule 9019 and sections 105 and 363(b) of the Bankruptcy Code.

## GENERAL BACKGROUND

7.     On September 12, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing this case (the "Bankruptcy Case").

8.     On November 19, 2018 (the "Conversion Date"), the Court entered an order converting the Debtor's Chapter 11 bankruptcy case to a case under Chapter 7 of the Bankruptcy Code.

9.     On November 20, 2018, Deborah J. Piazza was appointed as the interim Chapter 7 trustee of the Debtor's estate and is now the permanent Trustee of the Debtor's estate and continues to serve in such capacity.

10. The Debtor is the fee owner of three separate condominium units known as Unit #1, Unit #2 and Unit #4 in the building known as and located at 10 Bedford Street, New York, New York (the "Condominium Units").

## RELEVANT BACKGROUND RELATED TO PRE-PETITION LITIGATION AND SETTLEMENT

11. This section will provide the Court with background relating to the various disputes between the Parties and settlement of same.

12. Prior to the commencement of Pursuit's chapter 11 case, in 2009 the Knopfs commenced a lawsuit in the Supreme Court of the State of New York, County of New York entitled Michael I. Knopf, Norma Knopf and Delphi Capital Management LLC v. Michael Hayden Sanford, Pursuit Holdings, LLC, Sanford Partners, LP, MH Sanford & Co., LLC and Wyndclffe, LLC, Index No. 113227/09 (the "State Court Action"). The State Court Action has been pending for many years and has been the subject of five appeals and decisions by the Appellate Division, First Department. The Knopfs were the prevailing party on four of those appeals.

13. One of those decisions was a decision from the Appellate Division, First Department dated December 11, 2014 reversing the trial court's denial of the Knopfs' motion for summary judgment for breach of contract and awarded the Knopfs partial summary judgement on its claim for breach of contract against the Debtor. See, Knopf et al. v. Sanford, et al., 123 A.D. 3d 521 (2014). The Appellate Division did not quantify the amount of damages flowing from the breach of contract claim. Instead, that was left to the trial court. The trial court referred the matter to a judicial hearing officer ("JHO") (Ira Gammerman, a retired Supreme Court Judge), who after extensive briefing from the Parties determined the Knopfs were entitled to damages against the Debtor in the amount of $8,336,488.00. The Knopfs moved to confirm the

JHO's report and by decision and order dated February 9, 2018, the Honorable Gerald Lebovits partially confirmed the JHO's award and most importantly confirmed the JHO's calculations on the damages flowing from the breach of contract claim against the Debtor. A copy of Judge Lebovits' February 9, 2018 decision and order is annexed hereto as **Exhibit "B."**

14.     Based upon Judge Lebovits' February 9, 2018 decision and order, on February 22, 2018, a judgment was entered in favor of the Knopfs against the Debtor in the amount of $9,867,832.61 (the "Judgment") in the State Court Action. The Debtor timely filed a notice of appeal from the Judgment but has yet to perfect the appeal. The Judgment constitutes a judicial lien against the Condominium Units under the New York State law.

15.     As set forth above, the Appellate Division, First Department ruled the Knopfs were entitled to partial summary judgment on its claim for breach of contract against the Debtor and further held the Knopfs were entitled to dismissal of various counterclaims that had been filed by the Debtor's principal, Michael Hayden Sanford but did not dismiss Michael Hayden Sanford's counter claim for tortious interference with prospective business relations.

16.     Another decision from the Appellate Division, First Department, dated October 6, 2015, should be mentioned. At the outset of the State Court Action, the Knopfs filed notices of pendency against the Bedford Condominium Units, and another parcel of real estate (an apartment at 44 East 67th Street), that Pursuit allegedly purchased using a loan from the Knopfs. On October 15, 2013, the First Department extended these notices of pendency, stating:

> Plaintiffs' complaint asserts a cause of action for a constructive trust, and alleges that defendant Michael Sanford promised, in exchange for certain loans, that he would purchase two properties for the benefit of the subject hedge fund and provide plaintiffs with a mortgage on those properties but has refused to transfer the properties to the hedge fund or to plaintiffs. This cause of action, as pleaded, was sufficient to support the issuance of the subject notices of pendency, since it seeks a judgment that "would affect the title to, or the possession, use or enjoyment of, real property,

*Knopf v. Sanford*, 110 A.D.3d 502, 972 N.Y.S.2d 893 (1st Dept. 2013).

However, following the grant of summary judgment in the Knopfs favor (and the subsequent cancellation of the notices of pendency), the First Department reversed the trial court's refusal to order a hearing on the Debtor's request for cost and fees pursuant to CPLR 6514(c) in light of the dismissal of the notice of pendency. The Appellate Division remanded for a determination as to whether an award of costs and expenses are warranted pursuant to CPLR 6514(c).

17.    Following entry of the Judgment, the Knopfs served deposition and/or document subpoenas upon Michael Hayden Sanford, Nathaniel H. Akerman, Dorsey & Whitney, LLP, James M. McGuire and JPMorgan Chase Bank for the purpose of obtaining discovery from parties the Knopfs allege to be jointly liable for the damages underlying the Judgment and have advised the Trustee they intend to serve additional subpoenas for that purpose (the "Third Party Discovery").

18.    Aside from the State Court Action, the Knopfs (i) commenced an action in the United States District Court for the Southern District of New York entitled Norma Knopf and Michael Knopf v. Michael Phillips, Pursuit Holdings, LLC and Michael H. Sanford, Case No. 16cv6601 (DLC) (the "Phillips Action"[2]) and (ii) commenced an action in the United States District Court for the Southern District of New York entitled Norma Knopf and Michael Knopf v. Frank M. Esposito, Dorsey & Whitney LLP, Nathaniel H. Akerman, Edward S. Feldman, and Michael Hayden Sanford, Case No. 17cv5833 (DLC) (the "Esposito Action").

19.    In the Philips Action, the Honorable Denise Cote, entered Judgment dismissing the Knopfs' claims and in the Esposito Action, the Honorable Denise Cote, entered judgment dismissing the Knopfs' claims; and awarding certain monetary sanctions against the Knopfs and

---

[2] Apparently, in the Philips Action, the Debtor is named as necessary party, but no damages claim or claim for recovery of property are asserted against the Debtor.

the Knopfs' counsel. The Knopfs timely filed notices of appeal to the Second Circuit Court of Appeals in both the Phillips Action and the Esposito Action and these actions although currently stayed are to be argued in tandem in the Second Circuit Court of Appeals once the automatic stay is lifted.

20.    In 2018, the Knopfs commenced a new lawsuit against Michael Hayden Sanford in the Supreme Court of the State of New York, County of New York under Index No. 652743/2018 which seeks to hold the Debtor's principal, Michael Hayden Sanford, personally liable under veil piercing theories for the Judgment (the "Veil Piercing Action").

21.    As is evident by the above recitation of the general history of the various pending litigations, the Trustee submits these are highly complex issues which have been substantially litigated involving various parties and substantial sums of money all of which relate to the Condominium Units as well as Pursuit's prior ownership of another apartment located at 44 East, 67th Street in Manhattan, New York which was sold prior to the commencement of the chapter 11 case. These litigations also relate to various sensitive issues concerning an Office of Court Administrative report with respect to the behavior of various lawyers retained by the Debtor and the Debtor's principal and court clerks involved in the matters which ultimately led to the firing of a clerk in the Appellate Division.

22.    As a result of the various litigations and the status of same, the Trustee and her professionals performed significant due diligence. In that regard, the Trustee and her professionals have reviewed extensive pleadings and relevant documents provided by both the Knopfs and the Debtor and met with the Knopfs' counsel and the Debtor's principal and Debtor's counsel. Additionally, the Trustee's professionals have carefully reviewed various decisions from the Appellate Division and from the trial court as well as decisions issued by

Judge Cote in the Philips Action and Esposito Action. Finally, the Trustee reviewed an appraisal, obtained by the Knopfs in respect of the Condominium Units, and requested that MYC & Associates Inc. inspect the Condominium Units and advise as to their likely value and further discussed with counsel for the owner of unit #3 in the building, the potential sale of the Condominium Units separately or the property as a whole.

23.     Based upon the aforesaid due diligence and the Trustee and her counsel's analysis, the Trustee has determined in the exercise of her business judgment, the most prudent, cost effective and efficient manner of dealing with the estate assets is to enter into the Agreement with the Knopfs.

### SUMMARY OF SETTLEMENT[3]

24.     The salient terms of the settlement are as follows:

   a.  Within two (2) business days from the execution of the Agreement, the Knopfs shall pay the estate the sum of $200,000.00 (the "Settlement Payments")[4] and the Settlement Payments shall become property of the Debtor's bankruptcy estate upon the approval of the Agreement by the Court (the "Effective Date").

   b.  Within three (3) business days of the Effective Date, the Trustee shall execute and deliver quit claim deeds for each of the Condominium Units to Delphi Capital Management LLC.

   c.  On the Effective Date, the Knopfs shall have waived any further distributions from the bankruptcy estate except for the deeds for the Condominium Units and the Trustee shall withdraw the notice of appeal of the Judgment.

   d.  Mutual releases are exchanged between the Knopfs and the Trustee releasing all claims except that if the Knopfs prosecute a third-party action which results in the return of any real or personal property to the Debtor's estate, the Knopfs legal and equitable rights to submit a claim for the distribution for all or a portion of such return of property shall be preserved.

---

[3] The Agreement should be reviewed in full insofar as the above summary of the Agreement is intended to be a summary of the salient terms of the Agreement.
[4] The Trustee has received and is holding these funds.

e. To the extent necessary, the Knopfs shall be granted relief from automatic stay imposed by section 362 to permit the continuation of the State Court Action, the Veil Piercing Action, the Philips Action, the Esposito Action, the Third Party Discovery and any third-party claims (i.e. claims against entity other than the Debtor that may be jointly liable or liable as accessories for the damages underlying the Judgment). The relief from stay is limited such that in the event a judgment is obtained, the Knopfs are required to notify the Trustee and at that point the Trustee and the Knopfs will attempt in good faith to determine whether further relief from stay is warranted and seek approval of the Court of any resolution of those issues at such times.

f. The settlement only involves the Knopfs and the Debtor and does not involve the Debtor's co-defendants in the State Court Action. The Knopfs and any other parties in the State Court Action retain any rights and can continue to prosecute and/or defend the State Court Action. Only the claims between the Knopfs, on the one hand, and the Debtor and its estate, on the other, are resolved by this settlement.

## RELIEF REQUESTED AND LEGAL BASES THEREFOR

### A. Applicable Legal Standards

25.     By this Motion, the Trustee respectfully requests this Court approve the Agreement under Bankruptcy Rule 9019.

26.     Compromises and settlements are a normal part of the bankruptcy process. Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968). The structure and provisions of the Bankruptcy Code promote negotiation and settlement for the benefit of creditors in accordance with the "policy of the law generally [which is] to encourage settlements." In re Jackson Brewing Co., 624 F.2d 599 (5th Cir. 1980). Resolution of claims through settlement furthers the goal of bankruptcy administration to liquidate assets as rapidly as possible "consistent with obtaining the best possible realization upon the available assets and without undue waste by needless or fruitless litigation." In re Carla Leather, Inc., 44 B.R. 457, 471 (Bankr. S.D.N.Y. 1984), aff'd. 50 B.R. 764 (S.D.N.Y. 1985).

While debtors and trustees are free to pursue litigation on behalf of the estate, they should "exercise prudence and at the same time be in a position so as to act on a settlement opportunity when that opportunity arises." In re Carla Leather, Inc., 44 B.R. at 472.

27.    Approval of a compromise under Bankruptcy Rule 9019(a) is appropriate when the compromise is fair and equitable and is in the best interests of a debtor's estate. See, e.g., TMT Trailer Ferry, 390 U.S. at 424; see also In re Adelphia Communications Corp., 327 B.R. 143, 159 (decision to accept or reject settlement lies within sound discretion of bankruptcy court), adhered to on reconsideration, 327 B.R. 175 (Bankr. S.D.N.Y. 2005) ("The settlement need not be the best that the debtor could have obtained. Rather, the settlement must fall 'within the reasonable range of litigation possibilities.'") (citations omitted).

28.    Bankruptcy Rule 9019(a) empowers the Bankruptcy Court to approve compromises and settlements if they are in the best interests of the estate. Neither Rule 9019 nor any section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval. However, the standards for approval of settlements in bankruptcy are well established in precedent, focusing on the proposed settlement's reasonableness and its fairness to creditors.

29.    In making its determination as to the reasonableness and fairness of the settlement, the Court should "canvass" the issues to ascertain that the settlement does not fall below the minimal bounds of reasonableness. As stated by the Second Circuit:

> In undertaking an examination of the settlement, we emphasize that this responsibility of the bankruptcy judge, and ours upon review, is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement "fall[s] below the lowest point in the range of reasonableness," Newman v. Stein, 464 F.2d 689, 693 (2d Cir.), cert. denied, sub nom. Benson v. Newman, 409 U.S. 1039, 93 S. Ct. 521, 34 L.Ed.2d 488 (1972).

Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir.), cert. denied, 464 U.S. 822 (1983); Accord Anaconda-Ericson, Inc. v. Hessen (In re Teletronics Services, Inc.), supra, 762 F.2d at 189; In re Lion Capital Group, 49 B.R. 163, 175 Bank. S.D.N.Y. 1985); In re Carla Leather, Inc., 44 B.R. at 465. As noted by the Supreme Court, "the judge should form an educated estimate of the complexity, expense and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." TMT Trailer, 309 U.S. at 424 (citations omitted).

30.     Further, in assessing a settlement, the Court should give due consideration to the informed judgments of the Trustee and her counsel, and the principle the law favors compromise. In re Bell & Beckwith, 93 B.R. 569, 574 (Bankr. N.D. Ohio 1988) (the Court "may give weight to the opinions of the Trustee, the parties and their counsel"). In Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991), the Bankruptcy Court observed:

> Further, the court need not conduct a wholly independent investigation in formulating its opinion as to the reasonableness of a settlement. We may give weight to the informed judgments of the trustee or debtor-in-possession and their counsel that a compromise is fair and equitable, see, In re Carla Leather, Inc., 44 B.R. 457 (Bankr. S.D.N.Y. 1984), aff'd, 50 B.R. 764 (S.D.N.Y. 1985), and consider the competency and experience of counsel who support the compromise. See, In re Texaco, 84 B.R. 893 (Bankr. S.D.N.Y 1988); In re International Distribution Centers, Inc., 103 B.R. 420 (S.D.N.Y. 1989). And indeed, a court may approve a settlement even if it believes that the trustee or debtor-in-possession ultimately would be successful at trial. In re Teletronics Services, Inc., 46 B.R. 426 (E.D.N.Y 1984), aff'd 762 F.2d 185 (2d Cir. 1985). Finally, we must consider the principle that "the law favors compromise." In re Blair, 538 F.2d 849, 851 (9th Cir. 1976).

31.     Following the original framework for settlement reasonableness set forth in the Supreme Court's decision in TMT Trailer Ferry, the Second Circuit in Motorola, Inc. v. Official

Comm. of Unsecured Creditors and JP Morgan Chase Bank, N.A. (In re Iridium Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007) outlined the following seven factors (the "Iridium Factors") to be considered by a court in deciding whether to approve a compromise or settlement: (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment, (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting the settlement; (6) the nature and breadth of releases to be obtained by officers and directors, and (7) the extent to which the settlement is the product of arm's length bargaining.

32.     In evaluating a compromise, a court need not determine that all of the foregoing factors favor approval of a compromise, and the proposed compromise need not be the best agreement that could have been achieved under the circumstances. Adelphia Communications, 327 B.R. at 159-60. Instead, the court's proper "role is to determine whether the settlement as a whole is fair and equitable," In re Lee Way Holding Co., 120 B.R. 881, 890 (Bankr. S.D. Ohio 1990), and falls "within the reasonable range of litigation possibilities." In re Telesphere Commc'ns, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (citation omitted). In the Second Circuit, compromises in the bankruptcy context should be approved unless they "fall below the lowest point in the range of reasonableness." Cosoff v. Rodman, 699 F.2d 599, 608 (2d Cir. 1983) (citation omitted).

### B. The Proposed Settlement is Fair and Equitable and Does Not Fall Below the Lowest Point in the Range of Reasonableness

33.     The Trustee respectfully submits that when this Court "canvasses" the issues surrounding the proposed settlement, it should conclude, as does the Trustee and her professionals, the settlement does not "fall below the lowest point in the range of reasonableness." Indeed, the Trustee believes the settlement embodied in the Agreement is fair and reasonable, based upon her best business judgment for the reasons detailed below.

34.     The settlement, if approved, will enable the Trustee to satisfy what she believes to be the outstanding administrative claims of chapter 11 and chapter 7 case and anticipates that there will be a meaningful distribution to unsecured creditors. The bar date has been set for March 1, 2019 and, although, at this point the Trustee cannot determine the exact amount or extent of claims, based upon the Debtor's schedules it appears that a meaningful distribution to unsecured creditors can be effectuated.[5] Further, the settlement resolves millions of dollars of claims asserted by the Knopfs as embodied in the Judgment and enables the unsecured creditors to recover a meaningful distribution in a case where absent vacatur of the Judgment or a reversal of the Judgment on appeal, there would be no recovery for unsecured creditors.

### APPLICATION OF THE 9019 FACTORS TO THE AGREEMENT

35.     As demonstrated below, the relevant factors weigh in favor of approval of the Agreement.

#### (1) The Balance Between The Litigation's Possibility Of Success And The Settlement's Future Benefits

36.     In assessing the reasonableness of the settlement, one of the most significant factors for a court's consideration is its assessment of the likelihood of success in the litigation

---

[5] The Debtor's Schedule E/F lists no priority unsecured claimholders and approximately ten (10) creditors which appear to be non-insiders. Only three (3) of these ten (10) creditors are listed with liquidated amounts and these claims total less than $100,000.00.

compared to the certain recovery obtained from a settlement. <u>In re Hilten</u>, 404 B.R. 58, 71 (Bankr. E.D.N.Y. 2009) ("perhaps the most important factor to be considered in assessing a proposed settlement is the balance between the benefits of a successful outcome in the litigation discounted to reflect the likelihood of that outcome, and the benefits of the proposed settlement").

37. The Trustee, absent the settlement, would have to either move under CPLR 5015 for relief from the Judgment or prefect an appeal from the Judgment and succeed on the appeal. Based upon the Appellate Division's prior granting of summary judgment on the Knopfs' breach of contract claim against the Debtor, the Trustee believes her chances of success are slim because JHO Gammerman's findings regarding the Knopfs damages were confirmed by Judge Lebovits. The Trustee believes the settlement will yield a greater return in a shorter period of time than seeking vacatur of the Judgment or perfecting an appeal from the Judgment. The settlement virtually guarantees a recovery to unsecured creditors in a two-party dispute case where unless the Trustee succeeds in litigation, there will most certainly be no recovery.

38. Further, the Knopfs have provided the Trustee with an appraisal from 2016 which values the Condominium Units at less than $3 million considering their condition and the market. The Trustee's broker to wit MYC & Associates, Inc. has inspected the Condominium Units and at best believes the value of the Condominium Units do not exceed $5 million. In view of the Judgment which is a judicial lien against the Condominium Units, the settlement makes unequivocal sense for the estate.

(2) The Likelihood of Complex And Protracted Litigation, With Its Attendant Expense, Inconvenience, And Delay, Including <u>The Difficulty In Collecting On The Judgment</u>

39. There is no question the above referenced litigation is time consuming, protracted

and costly. The Court should also consider the fair and reasonable course of action for the Debtor's estate, with the limited available assets, giving consideration to the interests of creditors and the avoidance of burdening the estate with undue waste or needless or fruitless litigation. In re Del Grosso, 106 B.R. 165, 167-168 (Bankr. N.D. Ill. 1989); see also In re Culmtech, Ltd., 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990); In re Lawrence & Erausguin, Inc., 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990); see also Matter of Munford, Inc., 97 F.3d 449 (11th Cir. 1996) ("public policy strongly favors pre-trial settlement in all types of litigation because such cases, depending on their complexity, can occupy a court's docket for years on end, depleting resources of parties and the taxpayers while rendering meaningful relief increasingly elusive"); Hilten, 404 B.R. at 75 (while the likelihood of complex and protected litigation factor is "always a factor in considering the merits of a settlement, it is of particular consequence in the bankruptcy context, where the prompt administration of a bankruptcy estate, for the benefit of the debtor and creditors alike, is among a trustee's central objectives"). This is especially true in view of the Judgment obtained by the Knopfs. Although the Debtor timely filed a notice of appeal from the Judgment, which the Trustee could still perfect, the Trustee believes based upon the Appellate Division's prior decision and the relatively straight forward calculation of interest utilized by the JHO and confirmed by Judge Lebovits, the likelihood of success in obtaining vacatur of the Judgment is remote. Moreover, even if the Debtor were successful in arguing it was entitled to relief under CPLR 6514(c) based upon the improper notices of pendency, it would in all probability only modestly offset the Judgment since the trend of the case law is to hold that only costs and fees, rather than damages, are available for an improperly filed notice of pendency.

40. Further, aside from the costs associated with continued litigation, there is a significant inconvenience and delay to creditors by having to wait to the conclusion of the

litigation, which could take at least a year and likely longer, especially in light of the litigation history between the Parties. The settlement ensures unsecured creditors will obtain a prompt recovery which is consistent with the Trustee's statutory obligations to promptly reduce estate assets to cash.

### (3) The Paramount Interests Of The Creditors

41.    The paramount interest of creditors is served by the Agreement. It is desirable and beneficial to creditors the issues resolved in the Agreement be fully and finally settled in the manner and upon the terms and conditions set forth in the Agreement.

### (4) Whether Other Parties In Interest Support The Settlement

42.    The Trustee does not anticipate any opposition to the settlement from any creditors or parties in interest except the Debtor's principal and other parties that he is related to or controls. This bankruptcy case, as so many these days, is little more than a two-party dispute which ended up in Bankruptcy Court after a decade of state court litigation. The Trustee submits the settlement is in the best interest of non-insider unsecured creditors. Obviously, the Knopfs, the estate's largest creditor is in favor of the settlement.

### (5) The "Competency And Experience Of Counsel" Supporting The Settlement

43.    These factors are established here. First, the Trustee is represented by competent bankruptcy counsel that carefully analyzed the merits of the claims versus the risks and defenses. Indeed, Tarter Krinsky & Drogin LLP ("TKD") has handled numerous Chapter 7 trustee representations (and Chapter 11 cases on behalf of debtors in possession and creditors committee) in which a significant portion of TKD's day to day work relates to the prosecution of various causes of action for the benefit of unsecured creditors in an estate.

44.    Second, as noted herein, the result was not reached in a vacuum as the Trustee

and TKD spent considerable time conducting due diligence in comparing the likelihood of success in litigation against the benefits under the Agreement.

### (6) The Nature And Breadth of Releases To Be Obtained By Officers and Directors

45.     The Agreement includes customary releases and waivers of claims that were or could have been asserted by the Debtor and its estate against the Knopfs, and vice versa. The mutual releases between the Parties are tailored to release only the estate's claims and the Knopfs' claims against each other are not designed to impact third parties' rights to pursue any direct claims, if any.

### (7) The Extent To Which The Settlement Is The Product of Arm's Length Bargaining

46.     The Agreement is the product of arm's length bargaining between the Trustee's counsel and counsel to the Knopfs.

47.     Based on the foregoing, the Trustee believes the relevant factors weigh in favor of approval of the Agreement. The Trustee believes the terms of the Agreement are fair and reasonable and in the best interests of the Debtor's estate.

## **NOTICE OF MOTION**

48.     In compliance with Bankruptcy Rule 2002(a)(3), the Trustee intends to serve a notice of this Motion and the Motion upon (i) the United States Trustee for the Southern District of New York; (ii) counsel to the Knopfs; (iii) all the Debtor's known creditors based upon the filed schedules and filed proofs of claim; (iv) the Debtor's counsel; (v) the Debtor's principal, Michael H. Sanford; and (vi) all parties who have filed a notice of appearance in this case.

## NO PRIOR REQUEST

49.     No previous request for the relief sought herein has been made to this or any other Court.

## RESERVATION OF RIGHTS

50.     The Trustee hereby reserves her right to make any additional arguments at the hearing this Motion and submit additional papers in support of the relief requested in the Motion.

## CONCLUSION

51.     Given the various considerations and after application of the Iridium Factors, the Trustee, in her best business judgment, has determined the Agreement represents a fair and reasonable settlement that most certainly falls above the "lowest point of reasonableness."

52.     There is no doubt the Agreement will benefit the estate by producing a recovery for the estate's unsecured creditors when without the settlement, the likelihood will be no recovery for creditors. Further, the settlement also avoids the additional costs, delays, and risks of further litigation.

53.     In sum, the Trustee respectfully submits the settlement embodied in the Agreement is fair and reasonable and is warranted as a valid exercise of her best business judgment.

**WHEREFORE**, the Trustee respectfully requests this Court enter an order annexed hereto as **Exhibit "C"**, after a hearing (a) approving the Agreement annexed hereto as **Exhibit "A"** and (b) granting such other and further relief as is just and proper.

Dated: New York, New York
      January 11, 2019

                         **TARTER KRINSKY & DROGIN LLP**
                         *Attorneys for Deborah J. Piazza,*
                         *Chapter 7 Trustee*

          By:    /s/ Scott S. Markowitz
                 Scott S. Markowitz, Esq.
                 Michael Z. Brownstein, Esq.
                 1350 Broadway, 11th Floor
                 New York, New York 10018
                 Phone: (212) 216-1141
                 Email: smarkowitz@tarterkrinsky.com
                 Email: mbrownstein@tarterkrinsky.com

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
In re:                                              :
                                                    :        Chapter 7
PURSUIT HOLDINGS (NY), LLC                          :
*fka* Pursuit Holdings, LLC                         :        Case No.: 18-12738 (MG)
                              Debtor.               :
                                                    :
------------------------------------------------------------ x

## SETTLEMENT AGREEMENT

This settlement agreement (the "**Agreement**") is made this 7th day of January,

2019 (the "**Execution Date**") by and between Deborah J. Piazza (the "**Trustee**"), solely in her

capacity as chapter 7 trustee of Pursuit Holdings, LLC (the "**Debtor**") and Michael I. Knopf,

Norma Knopf and Delphi Capital Management LLC (the, "**Knopfs**") and together with the

Trustee (collectively, the "**Parties**") and sets forth the terms upon which the Parties have agreed

to settle the matters described below:

### RECITALS

**WHEREAS**, the Debtor is the fee owner of three separate condominium units

known as Unit #1, Unit #2 and Unit #4 in the building known as and located at 10 Bedford

Street, New York, New York (the "**Condominium Units**"); and

**WHEREAS**, on September 12, 2018 (the "**Filing Date**"), the Debtor filed a

voluntary chapter 11 petition with the United States of Bankruptcy Court for the Southern

District of New York; and

**WHEREAS**, on November 19, 2018, the Debtor's chapter 11 case was converted

to a chapter 7 case and the Trustee was appointed as interim chapter 7 trustee; and

**WHEREAS**, prior to the Filing Date, the Knopfs commenced a lawsuit in the

Supreme Court of the State of New York, County of New York entitled Michael I. Knopf,

Norma Knopf and Delphi Capital Management LLC v. Michael Hayden Sanford, Pursuit Holdings, LLC, Sanford Partners, LP, MH Sanford & Co., LLC and Wyndclffe, LLC, Index No. 113227/09 (the "**State Court Action**"); and

WHEREAS, the State Court Action proceeded for years and has been the subject of five appeals and decisions by the Appellate Division, First Department; and

WHEREAS, pursuant to a decision dated December 11, 2014, the Appellate Division, First Department ruled the Knopfs were entitled to partial summary judgment on its claim for breach of contract against the Debtor and further held the Knopfs were entitled to dismissal of various counterclaims that had been filed by the Debtor's principal, Michael Hayden Sanford but did not dismiss Michael Hayden Sanford's counter claim for tortious interference with prospective business relations; and

WHEREAS, on February 22, 2018, a judgment was entered in favor of the Knopfs against the Debtor in the amount of $9,867,832.61 (the "**Judgment**"); and

WHEREAS, the Debtor timely filed a notice of appeal from the Judgment but has yet to perfect the appeal; and

WHEREAS, the Judgment constitutes a judicial lien against the Condominium Units under New York State law; and

WHEREAS, following entry of Judgment, the Knopfs served deposition and/or document subpoenas upon Michael Hayden Sanford, Nathaniel H. Akerman, Dorsey & Whitney, LLP, James M. McGuire and JPMorgan Chase Bank for the purpose of obtaining discovery relating to potential claims against parties the Knopfs may allege to be jointly liable or liable as accessories for the damages underlying the Judgment and intend to serve additional subpoenas for that purpose (the "**Third Party Discovery**"); and

**WHEREAS**, aside from the State Court Action, the Knopfs commenced an action in the United States District Court for the Southern District of New York entitled Norma Knopf and Michael Knopf v. Michael Phillips, Pursuit Holdings, LLC and Michael H. Sanford, Case No. 16cv6601 (DLC) (the **"Phillips Action"**); and

**WHEREAS**, in the Phillips Action, the Debtor is named as a necessary party, but no damages claims or claims for recovery of property are asserted against the Debtor; and

**WHEREAS**, aside from the State Court Action and the Philips Action, the Knopfs commenced an action in the United States District Court for the Southern District of New York entitled Norma Knopf and Michael Knopf v. Frank M. Esposito, Dorsey & Whitney LLP, Nathaniel H. Akerman, Edward S. Feldman, and Michael Hayden Sanford, Case No. 17cv5833 (DLC) (the **"Esposito Action"**); and

**WHEREAS**, in the Phillips Action, the Honorable Denise Cote, entered judgment dismissing the Knopfs' claims; and

**WHEREAS**, in the Esposito Action, the Honorable Denise Cote, entered judgment dismissing the Knopfs' claims; and awarding certain monetary sanctions against the Knopfs and the Knopfs' counsel; and

**WHEREAS**, the Knopfs timely filed a notices of appeal to the Second Circuit Court of Appeals in both the Phillips Action and the Esposito Action;

**WHEREAS**, the Second Circuit has ordered the Esposito Appeal and Phillips Appeal be argued in tandem;

**WHEREAS**, following the commencement of this case, the Second Circuit Court of Appeals stayed further briefing on the Phillips Appeal and ordered the briefing in the Esposito appeal to be held in abeyance in light of the automatic stay resulting from this case;

**WHEREAS**, in 2018, the Knopfs commenced a new lawsuit against Michael Hayden Sanford in the Supreme Court of the State of New York, County of New York under Index No. 652743/2018 which seeks to hold the Debtor's principal, Michael Hayden Sanford, personally liable under veil piercing theories for the Judgment (the "**Veil Piercing Action**"); and

**WHEREAS**, the Trustee has requested that her real estate broker inspect the Condominium Units; and

**WHEREAS**, the Knopfs have provided to the Trustee a copy of an appraisal which values the Condominium Units at less than $3,000,000.00 as of February 1, 2016; and

**WHEREAS**, neither the Trustee nor the Trustee's broker believe the Condominium Units have a value of in excess of $5,000,000.00 and based upon the Knopfs' Judgment unless the Trustee is successful in vacating the Judgment on appeal there appears to be no equity in the Condominium Units for the benefit of the estate; and

**WHEREAS**, to avoid the costs and risks of further litigation between the Parties, the Parties have determined to resolve their disputes by mutual agreement on the terms and subject to the conditions set forth in this Agreement.

## SETTLEMENT

**NOW, THEREFORE**, in consideration of the promises and mutual covenants contained herein and other valuable considerations, the receipt and sufficiency of which are hereby acknowledged, it is stipulated and agreed by and between the Parties, as follows:

1. **Recitals Incorporated**. The recitals set forth above are confirmed by the Parties as true and correct and are hereby incorporated in full, and made a part of, this Agreement. The recitals are a substantive and contractual part of this Agreement.

2.      **Court Approval**.  The effectiveness of this Agreement, and the terms thereof are subject to entry of an order, in form and substance acceptable to the Parties, by the Bankruptcy Court approving this Agreement  (the date of entry of such order, the "**Effective Date**").  The Trustee agrees to promptly file such motions and other filings as may be required to obtain approval of this Agreement.  In the event the Agreement is not approved, this Agreement shall be null and void, shall not be admissible in any court proceeding for any purpose, and the fact that either Party entered into this Agreement shall not constitute evidence of the truth of any of the Parties' allegations or the admissibility of any evidence that may be offered by either Party in any court proceeding.

3.      **Transfer of Condominium Units to the Knopfs**.  Within two (2) business days from the Execution Date, the Knopfs shall deposit the sum of $200,000.00 with the Trustee (the "**Settlement Payment**").  Within three (3) business days from the Effective Date, the Trustee shall execute quit claim deeds (in a form acceptable for recording in the Office of the City Register) for each of the Condominium Units to Delphi Capital Management LLC and the Trustee shall retain the Settlement Payment which shall become property of the Debtor's bankruptcy estate and shall be utilized to pay claims and administrative expenses of the Debtor's bankruptcy estate in accordance with the statutory priorities contained in the Bankruptcy Code. To the extent a surplus remains after paying claims and administrative expenses it will be returned to the Knopfs.

4.      **Disposition of the Dispute between the Knopfs and the Debtor**.  Upon the Effective Date, the Knopfs will be deemed to have waived, any and all claims to any further distributions from the Debtor's bankruptcy estate beyond that represented by the delivery of the quit claim deeds for the Condominium Units to Delphi Capital Management, LLC. In addition,

the Trustee shall withdraw the notice of appeal from the Judgment. For avoidance of doubt, the Settlement only involves the Knopfs and the Debtor, but does not involve the Debtor's co-defendants in the State Court Action. The Knopfs and any other parties to the State Court Action retain whatever rights remain and can continue to prosecute and/or defend the State Court Action. Only the claims between the Knopfs, on the one hand, and the Debtor and its estate, on the other, are resolved by this settlement.

5. **Relief from the Automatic Stay**. Upon the Effective Date, to the extent necessary, the Knopfs shall be granted relief from the automatic stay imposed by section 362 of the Bankruptcy Code to permit the continuation of the State Court Action, the Veil Piercing Action, the Phillips Appeal, the Esposito Appeal and the Third-Party Discovery, and the prosecution of any third-party claims (*i.e.*, claims against entities other than the Debtor that may be jointly liable or liable as accessories for the damages underlying the Judgment). The relief from stay granted hereunder only permits the foregoing claims to be prosecuted to judgment. In the event judgment is obtained, the Knopfs will promptly notify the trustee and the parties will at that point attempt in good faith to determine whether further relief from stay is warranted and then present any necessary motion or stipulation relating to further relief from stay to the Court.

6. **Waiver of Attorney-Client Privilege**. Upon the Effective Date, the Trustee on behalf of the Debtor and its estate, waives any attorney-client privilege on behalf of the Debtor and its estate and will not object to the Knopfs obtaining any documents or testimony in discovery which may otherwise be subject to an attorney-client privilege held by the Debtor and its estate.

7.    **Trustee's Release**.

a.    Effective as of the Execution Date (subject to the approval of this Agreement by the Bankruptcy Court), the Trustee, on behalf of herself and on behalf of the Debtor and the Debtor's bankruptcy estate (the "**Trustee Releasors**"), release and discharge the Knopfs, (the "**Knopfs Released Parties**"), from any and all known and unknown claims, debts, disputes, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, sums of money due, judgments, suits, amounts, matters, issues and charges of any kind whatsoever (including, but not limited to, any claims for interest, attorneys' fees, and any other costs, expenses, amounts, or liabilities whatsoever), whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, foreseen or unforeseen, whether individual or derivative in nature, whether arising under federal or state statutory, common, or administrative law, or any other law, rule, or regulation, whether foreign or domestic, whether or not apparent or yet to be discovered, or which may hereafter develop, including without limitation those arising out of or relating to the Condominium Units or the State Court Action (the "**Trustee Release**"). Nothing herein shall constitute a release of the obligations under this Agreement.

b.    The Trustee expressly agrees that, in connection with the Trustee Release provided in the above paragraph of this Agreement, the Trustee waives any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principal of common law or foreign law, which is or has an effect which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

8.   **Knopfs' Release**.

   a.   Effective as of the Execution Date (subject to the approval of this Agreement by the Bankruptcy Court), the Knopfs Released Parties release and discharge the Trustee Releasors from any and all known and unknown claims, debts, disputes, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, sums of money due, judgments, suits, amounts, matters, issues and charges of any kind whatsoever (including, but not limited to, any claims for interest, attorneys' fees, and any other costs, expenses, amounts, or liabilities whatsoever), whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, foreseen or unforeseen, whether individual or derivative in nature, whether arising under federal or state statutory, common, or administrative law, or any other law, rule, or regulation, whether foreign or domestic, whether or not apparent or yet to be discovered, or which may hereafter develop, including without limitation those arising out of or relating to the Condominium Units or the State Court Action (the "**Knopfs Release**"). Nothing herein shall constitute a release of the obligations under this Agreement. Notwithstanding the foregoing, if the Knopfs prosecute a third party action which results in the return of any real or personal property to the Debtor's estate, the Knopfs' legal and equitable rights to submit a claim for the distribution of all or a portion of such returned property and the Trustee's right to object to any such claim shall not be deemed impaired by this Agreement.

   b.   The Knopfs expressly agrees that, in connection with the Knopfs Release provided in the above paragraph of this Agreement, the Knopfs waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States,

or principal of common law or foreign law, which is or has an effect which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

      c.    Nothwithstanding the foregoing release as set forth in subparagraphs (a.) and (b.) of this paragraph, nothing herein shall be deemed to release any third-party (*i.e.*, any entity other than the Debtor and its estate) from any claim by the Knopfs, whether known or unknown as of the date of this Stipulation, that such third-party is jointly liable or liable as an accessory for the damages underlying the Judgment.

      9.    **Notices**. All Notices hereunder shall be deemed given if in writing and delivered by registered or certified mail, or by overnight courier, to the following addresses:

If to The Trustee:

Deborah J. Piazza, Esq.
1350 Broadway, 11th Floor
New York, New York 10018

With a Copy to Trustee's Counsel:

Tarter Krinsky & Drogin LLP
1350 Broadway
New York, New York 10018
Attn: Scott S. Markowitz, Esq.

If to Knopfs:

Michael I. Knopf
1319 Mountain Summit Road
Travelers Rest, South Carolina 29690

With a copy to Knopfs' Counsel:

Berry Law PLLC
745 Fifth Avenue, 5th Floor
New York, New York 10151
Attn: Eric Berry, Esq.

10.     **Modifications to the Agreement**.  This Agreement shall not be modified, altered, amended or vacated without the prior written consent of the Parties.   Any such modification, alteration, amendment or vacation in whole or in part shall be subject to approval of the Bankruptcy Court.

11.     **Counterparts**.  This Agreement may be executed in any number of counterparts by the Parties on different counterpart signature pages, all of which taken together shall constitute one and the same agreement.  Any of the Parties may execute this Agreement by signing any such counterpart and each of such counterparts shall for all purposes be deemed an original.  This Agreement may be executed by facsimile and/or email (in PDF) which shall have the same force and effect as an original signature.

12.     **Entire Agreement**.  This Agreement represents the entire agreement between the Parties and supersedes all other prior agreements, understandings, or discussions, both written and oral, among the Parties in respect of the subject matter hereof.

13.     **Governing Law/Jurisdiction**.  This Agreement and the rights and duties of the Parties hereunder shall be governed and construed, enforced and performed in accordance with the laws of the State of New York without giving effect to principles of conflicts of law that would require the application of laws of another jurisdiction.  The Parties acknowledge and agree the Bankruptcy Court shall have exclusive jurisdiction over this Agreement and that any claims or causes of action arising out of or related in any manner to this Agreement shall be properly

brought only before the Bankruptcy Court and each Party consents to the Bankruptcy Court's power to hear and determine all such claims as a core proceeding.

14.    **No Admission of Liability**.  This Agreement is in compromise of the disputes between the Knopfs and the Trustee solely in her capacity as chapter 7 trustee of the Debtor's bankruptcy estate and shall not be construed as an admission of liability or fault by the Knopfs or the Trustee or any of their respective present or former directors, officers, employees or agents, which such liability is expressly denied.

15.    **Authorization**.  The person executing this Agreement on behalf of each respective Party warrants and represents that she or he is authorized and empowered to execute and deliver this Agreement on behalf of such Party.

16.    **Representations**.  Each of the Parties hereby represents and acknowledges that it has had an opportunity to consult with its counsel regarding the terms of this Agreement, understands the terms of this Agreement, has entered into this Agreement freely of its own will, and agrees to be bound to the terms of this Agreement.

17.    **Severability**.  If any provision of this Agreement is invalid or unenforceable, then, to the fullest extent permitted by law: (i) the Parties shall attempt to agree upon a valid and enforceable provision that is a reasonable substitute therefor, and upon so agreeing shall incorporate such substitute provision into this Agreement; (ii) the other provisions herein shall remain in full force and effect; and (iii) the invalidity or unenforceability of any provisions hereof shall not affect the validity or enforceability of such other provisions.

18.    **Binding Effect**.  This Agreement and each term hereof shall be binding upon and inure to the benefit of each of the Debtor, the Debtor' bankruptcy estate, the Knopfs, and their respective heirs, legal representatives, successors, and assigns.

19.    **Headings.**  The headings of paragraphs contained in this Agreement are for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this Agreement.

**IN WITNESS THEREOF**, the Parties hereto have executed and delivered this

Agreement as of the date and year first above written.

Dated: New York, New York
    January ⁀, 2019

_____
DEBORAH J. PIAZZA, ESQ., solely in her
capacity as Chapter 7 Trustee of Pursuit Holdings,
LLC

Dated: New York, New York
    January 2, 2019

_____
MICHAEL I. KNOPF

Dated: New York, New York
    January 2, 2019

_____
NORMA KNOPF

Dated: New York, New York
    January 2, 2019

DELPHI CAPITAL MANAGEMENT LLC

By: _____ Managing Member
Name: Michael I. Knopf
Title: Managing Member

**Execution Copy**

**EXHIBIT B**

**NEW YORK STATE SUPREME COURT**
**NEW YORK COUNTY: PART 7**

---

MICHAEL I. KNOPF, NORMA KNOPF,
and DELPHI CAPITAL MANAGEMENT LLC,

          Plaintiffs,

    -against-

MICHAEL HAYDEN SANFORD, PURSUIT
HOLDINGS LLC, SANFORD PARTNERS LP,
MH SANFORD & CO. LLC, and
WYNDCLYFFE LLC,

          Defendants.

Index No.: 113227/09
**DECISION/ORDER**
Motion Seq. No. 023 and 027

ALTERED TO
INSERT ¶ NUMBERS

---

Recitation, as required by CPLR 2219 (a), of the papers considered in reviewing plaintiffs' motion to confirm JHO Gammerman's report (motion sequence no. 023) and plaintiffs' motion to strike and for contempt (motion sequence no. 027).

| **Papers (mot. seq. no. 023)** | **Numbered** |
| --- | --- |
| Plaintiffs' Notice of Motion to Confirm | 1 |
| Plaintiffs' Volume II of Exhibits | 2 |
| Plaintiffs' Memorandum of Law in Support | 3 |
| Affirmation of James M. McGuire in Opposition | 4 |
| Affidavit of Michael Hayden Sanford in Opposition | 5 |
| Defendants' Memorandum of Law in Opposition | 6 |
| Reply Affirmation of Eric W. Berry in Support | 7 |
| Plaintiffs' Reply Memorandum of Law in Support | 8 |

| **Papers (mot. seq. no. 027)** | **Numbered** |
| --- | --- |
| Plaintiffs' Notice of Motion to Strike | 1 |

---

*Berry Law PLLC,* New York, NY (Eric W. Berry of counsel), for plaintiffs Michael Knopf and Delphi Capital Management.
*Gary Greenberg, Esq.,* New York, NY, for plaintiff Norma Knopf.
Defendants are pro se.[1]

Gerald Lebovits, J.

**\*1**    This decision and order consolidates plaintiffs' two motions: (1) a motion for an order pursuant to CPLR 4403 and rule 202.44 of the Uniform Rules of the Trial Court to confirm the report of the Honorable Ira Gammerman, J.H.O., filed on March 17, 2016, and directing the

---

[1] Dechert LLC, New York, NY (James McGuire of counsel) represented the defendants in filing the Motion to Confirm the Report Issued by JHO Gammerman, motion sequence no. 023.

Clerk to enter judgment in accordance with the findings in the report (motion sequence no. 023) and (2) a motion to strike the answers of each defendant as well as the counterclaim of defendant Michael Hayden Sanford and to enter judgment in accordance with the findings of J.H.O. Gammerman, together with the additional statutory interest that has accrued since the date of that report and to find Sanford in contempt of a decision and order of the Appellate Division, First Department, dated March 24, 2016, and a temporary restraining order issued by the Honorable Richard F. Braun, fine Sanford $650,000, and order him arrested and imprisoned until his contempt is cured (motion sequence no. 027).

\*2      The court will consider motion sequence no. 027 first, because a decision on the motion to strike will determine what papers are to be considered on motion sequence no. 023. Defendants submitted a letter requesting an adjournment of the return date on motion sequence no. 027, but did not submit formal opposition. The court considers motion sequence no. 027 unopposed. Defendants submitted opposition papers on motion sequence no. 023.

   Background

\*3      Plaintiffs Michael and Norma Knopf are a married couple, and plaintiff Delphi Capital Management LLC is a limited liability corporation wholly owned by the Knopfs. (Vol. II of Exhibits to Plaintiffs' Motion to Confirm ("Vol. II of Exhibits"), Exh. 4, ¶ 3.) Defendant Sanford is the sole member of defendants Pursuit Holdings, LLC; Sanford Partners, LLC; MH Sanford & Co., LLC; and Wyndclyffe, LLC. (Id ¶¶ 4-8.) These individuals and entities entered into a number of different loan and investment agreements that are at the center of this controversy.

\*4      In 2000, the Knopfs invested $11,607,810 in Sanford's hedge fund, Sanford Partners, through Delphi Capital Management. (Plaintiffs' Memorandum of Law in Support of their Motion JHO Gammerman's [sic] Report ("Memorandum in Support") at 3.)

\*5      The Knopfs also made five loans to Sanford and his companies between 2000 and 2006. Four of the five loans were disbursed from the monies the Knopfs invested in Sanford's hedge fund. These loans were a $100,000 Seed Capital Agreement on or about October 12, 2000; a $3,250,000 loan to buy three condominium units ("10 Bedford Street") on May 31, 2006; a revolving line of credit for $350,000 on May 30, 2006; and a trading loan of $1,627,842 in 2007. The fifth loan was for $1,690,860 to purchase a penthouse ("PHC") and came from plaintiff Norma Knopf directly on January 31, 2006. There is no dispute that these loans were not repaid, with the exception of $830,000 on the trading loan.

\*6      On September 17, 2009, plaintiffs filed a complaint in the Supreme Court, New York County, against defendants, alleging breach of contract, dissipation of assets, and breach of fiduciary duty and requesting the imposition of a constructive trust. Plaintiffs alleged that Sanford was liable for breach of contract on all these loans; that Pursuit was liable on the $3.25 million and the $1.69 million loans; that Wyndclyffe was liable on the $3.25 million loan; and that Sanford Partners and M.H. Sanford & Co. were liable on the line of credit and the trading loan. Defendants raised counterclaims.

\*7      Plaintiffs filed a summary-judgment motion that Judge Milton Tingling denied on August 16, 2013. Plaintiffs appealed. On December 11, 2014, the Appellate Division, First Department, granted plaintiffs partial summary judgment on their breach-of-contract claims and dismissed defendants' counterclaims except for Sanford's counterclaim for tortious interference. (Knopf v

*Sanford,* 123 AD3d 521, 521-522 [1st Dept 2014].) The decision did not provide for entry of judgment.

**\*8**     In February 2015, plaintiffs filed a motion in the Supreme Court to sever the claims upon which they had prevailed against Pursuit in the December 11, 2014, decision and to enter judgment or, alternatively, to issue a pre-judgment attachment against Pursuit. (Affirmation of James M. McGuire ("McGuire Aff."), Exh. S.) On July 23, 2015, Judge Braun held oral argument and granted the motion "to the extent of severing the claims upon which plaintiffs prevailed in the Appellate Division's December 11, 2014 decision" and referred those claims for an inquest. (Vol. II of Exhibits, Exh. 3.) In his opinion on the record on the motion to sever, Judge Braun stated, "Here severance is sought as to plaintiffs' claims in which the Appellate Division has already granted summary judgment, and defendant Pursuit has no counterclaims. The counterclaims are with Sanford, not with Pursuit. The summary judgment granted was against Pursuit, not Mr. Sanford." *(Id.* at 9-10.) Judge Braun denied the request for a pre-judgment attachment against Pursuit. *(Id.* at 12-13.)

**\*9**     Plaintiffs filed a note of issue to calendar a damages hearing in the court's inquest part. JHO Gammerman was assigned to conduct the hearing.

**\*10**     Pending the resolution of the breach-of-contract claims, plaintiffs filed several motions to prevent PHC and 10 Bedford Street, the properties purchased with the $1.69 million and $3.25 million loans, respectively, from being sold or to escrow any proceeds from a sale. In an order dated October 22, 2015, Justice John W. Sweeny, Jr., of the Appellate Division, First Department, ordered that PHC could be sold, but that the proceeds must be escrowed "pending further court order." (Plaintiffs' Notice of Motion to Strike Defendants' Answers and Defendant Michael Sanford's Counterclaim, and to Hold Sanford in Contempt of the Appellate Division's March 24, 2016 Decision and Order and the TRO Entered on March 2, 2016 ("Motion to Strike"), Exh. 5.) On November 12, 2015, a panel of the Appellate Division, First Department, denied plaintiffs' motion "for prejudgment attachment pursuant to CPLR 6201 or, in the alternative, for a preliminary injunction enjoining defendants from transferring, mortgaging, or otherwise impairing the value of the subject properties pending hearing and determination of" the appeal of Judge Braun's decision of July 23, 2015. (Edward S. Feldman, Affirmation in Opposition, Exh. A, included in Motion to Strike, Exh. 9.) On December 29, 2015, a full panel of the Appellate Division denied a cross-motion to vacate the interim order of October 22, 2015. (Motion to Strike, Exh. 6.)

**\*11**     On February 1, 2016, Sanford sold the PHC property for $3 million. (Motion to Strike, Affirmation of Eric Berry ("Berry Aff.), 7.) The proceeds were transferred to Sanford; several of Sanford and Pursuit's other creditors; Royal Abstract, which received $650,000 to secure a claim by Meister Seelig & Fein for outstanding attorney fees; and Dechert, L.P., which received a $500,000 initial retainer. *(Id.)*

**\*12**     The Knopfs later learned of the sale and that the proceeds had not been paid into escrow. On February 25, 2016, the Knopfs obtained a new order from the Appellate Division, Justice Karla Moskowitz, directing that any remaining proceeds from the sale be put into escrow. (Motion to Strike, Exh. 11.)

**\*13**     JHO Gammerman held hearings in January and February 2016 and issued his report on February 8, 2016. (Notice of Motion to Confirm the Report Issued by JHO Gammerman

("Motion to Confirm"), Exh. 1-A at 12.) JHO Gammerman found that Sanford was liable for $10,937,850 and that Pursuit was jointly liable with Sanford for $8,336,488.

*14    On March 2, 2016, Judge Braun issued an order to show cause and a temporary restraining order providing that

> "Pursuit, Sanford and all other persons or garnishees under them, be and hereby are RESTRAINED and PROHIBITED pursuant to CPLR 6210 from (A) transferring or paying any assets of Pursuit, or any other personal property in which Pursuit has an interest, or any debt owed to Pursuit, to the extent of $8,336,488.97 and (B) transferring or paying any assets of Sanford, or any personal property in which Sanford has an interest, or any debt owed to Sanford, to the extent of $10,937,850." (Motion to Strike, Exh. 12.)

*15    On March 24, 2016, a full panel of the First Department issued an order modifying Judge Braun's earlier July 23, 2015, decision. The order remanded "the matter to the motion court for a hearing on whether to grant a prejudgment attachment," and directed

> "that, pending the determination after a hearing, defendant Pursuit Holdings, LLC is prohibited from transferring, or further diminishing, impairing or encumbering the properties it acquired with real estate loans from plaintiffs, including but not limited to the property located at 10 Bedford St., New York, New York, as well as any proceeds derived from the sale of such properties prior to the date of this order." *(Knopf v Sanford,* 137 AD3d 662, 663 [1st Dept 2016].)

*16    On April 8, 2016, plaintiffs filed a motion to confirm JHO Gammerman's report and to direct the clerk to enter judgment in accordance with the report. Defendants opposed the motion on the grounds that service of the notice of motion was improper, that Pursuit was wrongly deemed liable for two of the loans, that the JHO had no authority to make determinations regarding Sanford, and that the JHO calculated interest incorrectly. (Memorandum of Law in Opposition to Plaintiff's Motion to Confirm JHO Gammerman's Report and Recommendations ("Memorandum in Opposition") at 1-4, 15.)

*17    Judge Braun denied plaintiffs' motion to confirm on or about November 3, 2016, on the grounds of improper service. The Appellate Division reversed and remanded the case "to the court to confirm, reject, or modify JHO Gammerman's report on the merits." *(Knopf v Sanford,* 150 AD3d 608, 610 [1st Dept 2017].)

*18    Judge Braun recused himself from the case on June 26, 2017, and this action was transferred to this court.

Motion Sequence No. 027

Plaintiffs' motion to strike defendants' answers and counterclaim is denied.

A motion to strike is under CPLR 3126, which provides that

> "If any party, or a person who at the time a deposition is
> taken or an examination or inspection is made is an officer,
> director, member, employee or agent of a party or
> otherwise under a party's control, refuses to obey an order
> for disclosure or willfully fails to disclose information
> which the court finds ought to have been disclosed pursuant
> to this article, the court may make such orders with regard
> to the failure or refusal as are just, among them:
>
> * * *
>
> "3. an order striking out pleadings or parts thereof, or
> staying further proceedings until the order is obeyed, or
> dismissing the action or any part thereof, or rendering a
> judgment by default against the disobedient party."

*20     An order to strike an answer or a counterclaim is a "drastic remedy" appropriate only when the non-moving party's actions in failing to disclose information were "willful, contumacious or in bad faith." *(McGilvery v New York City Tr. Auth.,* 213 AD2d 322, 324 [1st Dept 1995].) "Apart from CPLR 3126, a court has inherent power to address actions which are meant to undermine the truth-seeking function of the judicial system and place in question the integrity of the courts and our system of justice." *(CDR Creances S.A.S. v Cohen,* 23 NY3d 307, 318 [2014].) In the case of *CDR Creances S.A.S.,* the court upheld striking defendants' answer when defendants had suborned perjury, lied in depositions, forged affidavits, and "intentionally and pervasively ignored court-ordered discovery allegations." *(Id* at 315.)

*21     In this case, plaintiffs allege that Sanford paid Frank Esposito, a Long Island lawyer who is married to a court attorney in the Appellate Division, First Department, between $25,000 and $55,000 for an "advisory opinion" from his wife regarding the October 22, 2015, escrow order and the December 29, 2015 denial of vacatur. (Berry Aff., 2.) Defendants were seeking to sell the PHC property and the potential buyer's title insurer refused to insure title because of the orders. *(Id,* 37.) Sanford and Esposito executed a Retention Agreement on January 11, 2016, stating that Esposito Partners would be retained as General Counsel to MH Sanford & Co. LLC at a flat rate of $55,000 for a six-month term. (Motion to Strike, Exh. 7.) On January 12, 2016, two of Sanford's attorneys, Nathaniel Akerman and Edward Feldman, had an ex parte telephone conference call with Esposito's wife, Melissa Ringel. (Berry Aff., 5.) During that conversation, Ringel allegedly told Sanford's attorneys that the restrictions on the sale of PHC were no longer in effect and that the December 29, 2015, motion for vacatur of the escrow order was denied "because it was moot." *(Id.,* 46.) Feldman wrote a memorandum of the conversation with Ringel. (Motion to Strike, Exh. 30.) On January 15, 2016, Feldman notified Phillips' title company that "the appellate division vacated all restraints." *(Id,* Exh. 29.) Sanford paid Esposito some portion of the retainer on January 19, 2016. *(Id,* Exh. 8.) On February 1, 2016, Sanford sold the PHC property for $3 million. (Berry Aff., 7.)

**\*22**    Plaintiffs allege that the foregoing facts prove that defendants paid Esposito to obtain an advisory opinion from Ringel, his wife, to help them circumvent the courts' orders requiring them to put sale proceeds in escrow. They further allege that defendants manufactured evidence. *(Id.,* ¶58.) On this basis, plaintiffs argue that this court should strike defendants' answer, dismiss Sanford's counterclaim, and enter judgment in accordance with JHO Gammerman's report.

**\*23**    Plaintiffs' allegations, even if true, do not support striking an answer or counterclaim. Striking an answer or a counterclaim is an extreme remedy for failure to cooperate with discovery requests or other types of intentional interference with the court's ability to obtain truthful testimony and evidence. Plaintiffs have not alleged that defendants have failed to cooperate with any discovery orders, nor have plaintiffs alleged that defendants suborned or committed perjury. They allege that defendants manufactured an ex parte advisory opinion by Ringel and that this constituted "manufacturing evidence." *(Id.,* ¶58.) As proof of that claim, plaintiff submits a copy of the file memorandum Feldman wrote after the phone call with Ringel. (Motion to Strike, Exh. 30.) The memorandum appears to be a summary of the telephone conference with Ringel and provides her interpretation of the various court orders. It does not look or appear to be an "advisory opinion," an official court document, or anything other than a memorandum of a conversation. This memorandum does not constitute fabricated evidence. Moreover, this memorandum was not submitted in relation to the motion to confirm JHO Gammerman's report. Plaintiffs received it through discovery in a different, related action. (Berry Aff., ¶49.)

**\*24**    The allegations against defendants are serious, but a motion to strike is not the proper remedy for such allegations. The motion to strike defendants' answer and Sanford's counterclaim is denied.

**\*25**    The motion to hold Sanford in contempt of two court orders is also denied, without prejudice.

**\*26**    Judiciary Law §§ 750 and 753 provide for penalties for criminal and civil contempt. Criminal contempt is a public violation against the dignity and authority of the court, whereas civil contempt is a private remedy to redress an injury against a party in litigation. Section 750 (A)(3) provides that a court may find criminal contempt in the case of "willful disobedience to its lawful mandate." A court may find a party in civil contempt under § 753 for "disobedience to a lawful mandate of the court."

**\*27**    Plaintiffs' sole allegations test on the transfer on August 8, 2017, of $650,000 from Royal Abstract to Meister Seelig & Fein. Plaintiffs claim that this transfer violated the March 2 TRO and the March 24 decision and order because these funds were proceeds from the sale of a property acquired with real-estate loans from plaintiffs. According to plaintiffs' pleadings, defendants transferred the $650,000 to Royal Abstract shortly after the sale of PHC, in January or February of 2016, prior to the March 2 and March 24 orders. (Berry Aff., ¶¶7-8.) In a March 1, 2016, email from James McGuire, another of defendants' former counsel, to Berry, McGuire states that the money deposited with Royal Abstract was in an escrow account pursuant to an Escrow and Deposit Agreement "as indemnity and security for the Meister Seelig & Fein mortgage." (Motion to Strike, Exh. 32.)   According to McGuire's email, once the funds were placed into the Royal Escrow, they were "beyond the possession, custody or control of Pursuit and Mr. Sanford." *(Id.)* The email contained an attachment entitled "Royal Abstract of New

York LLC Escrow and Deposit Agreement," but plaintiffs did not include a copy of this attachment in their exhibits.

**\*28**    Plaintiffs assert that defendant Sanford caused the funds to be released by Royal Abstract to Meister Seelig & Fein. To demonstrate that Sanford caused the release of the funds, the court would require additional information, including the terms of the escrow agreement and the circumstances of the release of the funds from Royal Abstract to Meister Seelig & Fein. Without that crucial information, the court cannot determine whether the transfer of the money from Royal Abstract constituted contempt of a court order or a transfer by the escrow agent upon satisfaction of a condition precedent in the escrow agreement. The motion to hold Sanford in contempt is denied, without prejudice.

\*29

Motion Sequence No. 023

Plaintiffs' motion to confirm JHO Gammerman's report is granted insofar as it applies to Pursuit and denied insofar as it applies to Sanford.

**\*30**    Under CPLR 4403, the court "may confirm or reject, in whole or in part, the verdict of . . the report of a referee to report; may make new findings with or without taking additional testimony; and may order a new trial or hearing." The rules for referees apply to judicial hearing officers (JHOs). *(See* CPLR 4301.) The court may properly defer to the JHO's findings of fact because the JHO "was in the best position to weigh the evidence and make credibility determinations." *(Andersen ex rel. Andersen, Weinroth & Co., L.P. v Weinroth,* 48 AD3d 121, 133 [1st Dept 2007].)

**\*31**    In their opposition to the motion, defendants set forth a number of arguments about why the court should reject JHO Gammerman's report. Judge Braun rejected the report based on defendants' claim that the note of issue was not properly served. On appeal, the Appellate Division rejected that argument as well as defendants' argument that defendants were denied their right to a jury trial on damages. *(Knopf v Sanford,* 150 AD3d at 608.) The Appellate Division remanded the motion to Supreme Court to consider defendants' remaining arguments against confirming JHO Gammerman's report.

**\*32**    Defendants argue that the report erroneously finds Pursuit liable on the $1,690,860 loan and the $3,250,000 loan. This issue was settled by the Appellate Division, which granted plaintiffs partial summary judgment on all their breach-of-contract claims. *(Knopf v Sanford,* 123 AD3d at 521.) The breach-of-contract claims in the complaint allege that Sanford and Pursuit are liable on both the $1,690,000 loan and the $3,250,000 loan. (Vol. II of Exhibits, Exh. 4, Complaint, 13, 17.)

**\*33**    Defendants argue that JHO Gammerman acted in excess of his authority by making determinations against Sanford.

**\*34**    JHOs who determine issues not part of the order of reference act in excess of their authority. The court may not confirm that part of a JHO's report that exceeds the scope of or deviates from the order of reference. *(LA Gear, Inc. v Kidfusion, LLC,* 52 AD 3d 202, 202 [1st Dept 2008]; *Westland Garden State Plaza, L.P. v EZAT, Inc.,* 39 AD3d 291, 292 [1st Dept 2007].) The court is not, as defendants suggest, required to reject the entire report. *(See e.g.*

*Westland Garden State Plaza, L.P.,* 39 AD3d at 291-292.) It may modify the report to confirm only those parts that conform with the order of reference. (CPLR 4403.)

*35    Plaintiffs' motion for severance named only Pursuit. Judge Braun granted the severance as to Pursuit only, as is stated in his decision on the record, quoted above. Although the order implementing the decision is not specific about which defendants are included in the order of reference, the decision controls in this situation, and the order should be settled accordingly. *(Bricuso v Edison Parking Corp.,* 222 AD2d 328, 328 [1st Dept 1995].)

*36    This court disagrees with plaintiffs' argument that the parties modified the order of reference to include Sanford by a stipulation in open court under CPLR 2104. Plaintiffs cite statements James Prestiano, counsel for the corporate defendants, made in the inquest that "what has to be determined is which parties allegedly owe that money." (Motion to Confirm, Exh. 1-C at 24.) Mr. Prestiano is not counsel for Sanford in his personal capacity and has no authority to speak on Sanford's behalf. Sanford appeared pro se at the inquest. Sanford did not agree that the JHO was to determine the amounts of his personal liability. Sanford stated at the inquest that Judge Braun ordered "severance against Pursuit. That's all that was supposed to be before you. An issue about Pursuit." *(Id.* at 86.) No stipulation in open court expanded the scope of JHO Gammerman' s responsibilities.

*37    The order of reference applied only to Pursuit, not to any other defendant. The JHO exceeded the scope of the order of reference by determining the amounts owed by Sanford individually. The court rejects the report insofar as it pertains to Sanford and confirms the JHO's finding that Pursuit's pre-interest liability is $4,940,860.

*38    Defendants' further contest JHO Gammerman's calculation of interest on the loans against Pursuit.

*39    The JHO calculated interest on the $1,690,860 according to the rate contractually agreed to (9%) from the date the agreement was made (January 31, 2006) until the "contract was merged in a judgment" on February 8, 2016, the date the JHO issued his report. On the $3,250,000 loan, the loan agreement does not specify an interest rate, and the JHO applied the default rate of 9% per annum, beginning to accrue from September 17, 2009, when the complaint was filed (CPLR 5001 [b]) and ending on February 8, 2016, with the JHO's report. The interest amounts on the two loans are $1,525,091.47 and $1,870,537.50, respectively.

*40    Defendants argue that this method of calculating interest is incorrect because, they allege, in an agreement between the parties on May 30, 2006, plaintiffs waived interest. They argue that this contract "called for interest on all of the loans ... by Plaintiffs to be 'deferred' in exchange for Mr. Sanford, Sanford Partners, and MH Sanford & Co.'s giving Plaintiffs 'a 20% economic interest in all net profits derived from Performance Allocations and Management Fees, minus Management Expenses.'" (Memorandum in Opposition at 16.)

*41    The May 30, 2006 agreement does not indicate that plaintiffs intended to waive interest. The only reference in the May 30 agreement regarding interest on the prior loans reads as follows: "In return for approximately $5.65 million dollars of interest deferred short- and long-term loans. ..." (Vol. II of Exhibits, Exh. 4-6.) As the Appellate Division noted in its decision on summary judgment, "although later loan agreements refer to earlier agreements, the later

agreements do not alter or reflect an intent to supersede the terms of the earlier agreements."
*(Knopf v Sanford,* 123 AD3d at 522.)

*41

The court finds that JHO Gammerman calculated interest on the two loans properly.

Accordingly, it is

*42

ORDERED that plaintiffs' motion sequence no. 027 to strike defendants' answer and counterclaim is denied, and that portion of the motion asking to find Michael Hayden Sanford in contempt of a decision and order of the Appellate Division, First Department dated March 24, 2016 and a temporary restraining order issued by the Honorable Richard F. Braun, J.S.C. dated March 2, 2016 is denied without prejudice; and it is further

*43

ORDERED that plaintiffs' motion to confirm JHO Gammerman's report (mot. seq. no. 023) is denied in part and granted in part. Plaintiffs' motion to confirm JHO Gammerman's report is granted insofar as it applies to Pursuit Holdings LLC and denied insofar as it applies to Michael Hayden Sanford; and it is further

*44

ORDERED that judgment be entered for plaintiffs and against Pursuit Holdings LLC in the amount of $8,336,488, with interest from February 8, 2016 at the statutory rate until entry of judgment, as calculated by the Clerk, together with costs and disbursements, as taxed by the Clerk; and it is further

ORDERED that plaintiffs serve a copy of this decision and order with notice of entry on defendants and on the County Clerk's Office, which is directed to enter judgment accordingly.


Dated: February 9, 2018


J.S.C.

**HON. GERALD LEBOVITS**
**J.S.C.**


# FILED

**FEB 21 2018**

9

**EXHIBIT C**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

In re:                                      :
                                            :        Chapter 7
PURSUIT HOLDINGS (NY), LLC                  :
*fka* Pursuit Holdings, LLC                 :        Case No.: 18-12738 (MG)
                         Debtor.            :
                                            :
------------------------------------------------------------ x

### ORDER APPROVING SETTLEMENT AGREEMENT PURSUANT TO BANKRUPTCY RULE 9019 FOR APPROVAL OF STIPULATION OF SETTLEMENT AND GRANTING RELATED RELIEF

Upon the motion dated January 11, 2019 (the "Motion") [Dkt. No. __ ] of Deborah J. Piazza, solely in her capacity as Chapter 7 trustee (the "Trustee"), of the estate of Pursuit Holdings (NY), LLC (the "Debtor") by and through her counsel, Tarter Krinsky & Drogin LLP, seeking entry of an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving a settlement agreement dated January 7, 2019 (the "Agreement") between the Trustee, on the one hand, and Michael I Knopf, Norma Knopf and Delphi Capital Management LLC ("Knopfs") together with the Trustee (the "Parties") on the other hand, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to all creditors as required by Bankruptcy Rule 2002(a)(3), and it appearing that no other or further notice need be provided; and a hearing having been held on February ___, 2019 (the "Hearing") to consider approval of the settlement described in the Motion and addressed at the Hearing; and the terms of

the Agreement and settlement being fair and reasonable and well within the range of reasonableness and in the best interests of creditors and parties in interest; and upon the record established at the Hearing; and after due deliberation and sufficient cause appearing therefor; and for the reasons set forth by the Court at the Hearing; it is hereby

**ORDERED** that the Motion is granted as set forth herein and on the record of the Hearing; and it is further

**ORDERED** that pursuant to Bankruptcy Rule 9019, the Agreement annexed hereto as **Exhibit "A"** and all terms and conditions therein are approved by the Court and the Agreement is an enforceable agreement of the Parties; and it is further

**ORDERED** that the Trustee's entry into, and performance of all of her obligations under, the Agreement is approved; and it is further

**ORDERED** that the Parties to the Agreement are authorized and directed to take all actions necessary to effectuate the terms of the Agreement; and it is further

**ORDERED** that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: New York, New York
      February __, 2019

 

                                                  **HONORABLE MARTIN GLENN**
                                                  **UNITED STATES BANKRUPTCY JUDGE**