**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

PURSUIT HOLDINGS (NY), LLC,

Debtor.

**NOT FOR PUBLICATION**

Case No. 18-12738 (MG)
Chapter 7

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR AN ORDER APPROVING THE SETTLEMENT AGREEMENT

*A P P E A R A N C E S :*

OSBORN LAW PC
*Attorneys for Pursuit Holdings (NY), LLC*
43 W. 43rd Street
Suite 131
New York, NY 10036
By:    Daniel Osborn, Esq.

TARTER KRINSKY & DROGIN LLP
*Attorneys for the Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, NY 10018
By:    Scott S. Markowitz, Esq.
        Michael Brownstein, Esq.

BERRY LAW PLLC
*Attorneys for Michael Knopf, Norma Knopf, and Delphi Capital Management, LLC*
745 Fifth Avenue, 5th Floor
New York, NY 10151
By:    Eric W. Berry, Esq.

DUFFY AMEDEO LLC
*Attorneys for Michael Knopf, Norma Knopf, and Delphi Capital Management, LLC*
275 Seventh Avenue, 7th Floor
New York, NY 10001
By:    Todd E. Duffy, Esq.

ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.
*Attorneys for Orange Clockwork Trust*
875 Third Avenue
New York, NY 10022-0123
By:    Robert M. Sasloff, Esq.

MICHAEL HAYDEN SANFORD
*Pro Se*
23 McKinley Road
Montauk, NY 11954

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion of the Chapter 7 Trustee, Deborah J. Piazza (the

"Trustee"), seeking approval under Rule 9019 of the Federal Rules of Bankruptcy Procedure of a

settlement between the Trustee of the estate of Pursuit Holdings (NY), LLC ("Pursuit" or the

"Debtor") and Michael I. Knopf, Norma Knopf and Delphi Capital Management LLC

(collectively, the "Knopfs").  ("Motion," ECF Doc. # 45.)  The settlement agreement dated

January 7, 2019 (the "Agreement," ECF Doc. # 45 at 21–33) is annexed to the Motion as Exhibit

A.  (Motion at 1.)  Objections to approval of the Agreement were filed by Pursuit's attorney (ECF

Doc. # 51) and by Michael Hayden Sanford ("Sanford"), who owns 100% of Pursuit's

membership interests.  (ECF Doc. # 53.)  A limited response, since resolved, was filed by the Tax

Lien Trust.  (ECF Doc. # 52.)  The Knopfs' counsel filed a declaration in support of the settlement

approval.  (ECF Doc. # 54.)  The Trustee filed a reply ("Reply," ECF Doc. # 55).  The

Agreement, if approved, will bring $200,000 into the estate, making a distribution to unsecured

creditors possible.  More importantly, it will end nearly 10 years of bitter litigation between

Pursuit and the Knopfs.  The Agreement will leave Sanford and the Knopfs free to continue their

legal battles, which they appear intent on doing.

For the reasons explained below, the Motion to approve the Agreement is **GRANTED**.

2

# I.    **INTRODUCTION**

The history of litigation underlying the Debtor's bankruptcy filing—principally between the Knopfs, Pursuit, and Sanford—is lengthy and ongoing.  In addition to this bankruptcy case, initially filed on September 12, 2018 as a case under Chapter 11, but converted on November 19, 2018 to a case under Chapter 7, the dispute has included at least two state court actions and three federal district actions.[1]  While the bankruptcy automatic stay prevented the state and federal district court actions from continuing against Pursuit, the most recent state trial court decision resulted in a judgment entered on March 6, 2019 in favor of the Knopfs and against Sanford (against whom the automatic stay does not apply) in the amount of $10,362,402.99.  *See* Judgement at 1–2, *Knopf v. Sanford*, Index No. 652743/2018 (N.Y. Sup. Ct. Mar. 6, 2019), Doc. No. 177.  The February 4, 2019 Decision and Order of New York Supreme Court Justice Gerald Lebovits, which ordered the entry of the judgment against Sanford, includes a blistering recitation of misconduct by Sanford aimed at the Knopfs.  *See* Decision and Order, 6–12, *Knopf v. Sanford*, Index No. 652743/2018, (N.Y. Sup. Ct. Feb. 4, 2019), Doc. No. 164 (hereinafter, the "February 4 Decision and Order").  The judgment against Sanford is based on alter ego and veil-piercing theories.  *Id.* at 12.  Before Pursuit's chapter 11 case was filed, Justice Lebovits imposed joint and several liability on Pursuit and Sanford.  While this judgment was entered against Sanford alone *after* the Trustee reached the settlement with the Knopfs, it says legions about the wisdom of the Trustee (and her appropriate exercise of business judgment) in negotiating the settlement.

---

[1]    Salient pieces of the litigation history will be further discussed below, but for context, a few of the most recent decisions from the various actions arising from the dispute between the litigants include: *Knopf v. Phillips*, No. 16-CV-6601 (DLC), 2018 WL 4080347, at *1–2 (S.D.N.Y. Aug. 27, 2018); *Knopf v. Esposito*, No. 17-CV-5833 (DLC), 2018 WL 3579104, at *1–6 (S.D.N.Y. July 25, 2018); *Knopf v. Meister, Seelig & Fein LLP*, 721 F. App'x 96, (Mem.)–98 (2d Cir. 2018); *Knopf v. Sanford*, No. 113227/2009, 2018 WL 1769299 (N.Y. Sup., N.Y. Cty. Feb. 9, 2018); *Knopf v. Sanford*, 150 A.D.3d 608, 608, 55 N.Y.S.3d 214, 214 (N.Y. App. Div. 2017).

In the ongoing dispute, the first state court action, alone, resulted in five appeals heard and decided by the Appellate Division, First Department, and three federal district court actions, each of which produced multiple opinions by the district court and one or more trips to the Second Circuit. In short, the ongoing litigation can be described as a "blood feud." (Trustee's Reply at 2.). The crux of the disputes primarily arises out of two real estate loans made by the Knopfs to Pursuit for the purchase of several properties including the Condominium Units (defined below) in New York City. Sanford caused Pursuit to use funds borrowed from the Knopfs to purchase these properties. The Knopfs allege that Sanford and Pursuit breached the loan agreements and committed fraud related to the properties by failing to grant the Knopfs mortgages on the properties after they were acquired.

The Knopfs obtained summary judgment on their breach of contract claims against Pursuit and Sanford in 2014. *See Knopf v. Sanford*, 123 A.D.3d 521, 521 (N.Y. App. Div. 2014). Approximately three years later, on February 22, 2018, the New York Supreme Court entered a money judgment in the action, awarding the Knopfs damages of $9,867,832.61 ("Judgment") against Pursuit. *See Knopf v. Sanford*, No. 113227/09, 2018 WL 1769299, at *35–44 (N.Y. Sup. Ct. Feb. 9, 2018). The Judgment was recorded and constitutes a judicial lien against Pursuit's Condominium Units. (Agreement at 22.) Later that year, Pursuit filed its bankruptcy petition.

The Agreement proposed by the Trustee's Motion would put to rest any further litigation between the Knopfs and the Debtor and would satisfy the Knopfs' outstanding Judgment against the Debtor. However, to be clear, it would not end the litigation between the Knopfs and Sanford in his individual capacity; they seem poised to continue litigating vigorously.

The objections by Pursuit's attorney and by Sanford are clearly aimed to keep the Debtor in the continuing litigation with the Knopfs, no doubt in the hope of the Debtor funding all or

4

most of the ongoing battle.  But neither Pursuit's attorney nor Sanford can substitute their (clouded and conflicted) judgment for the experience, good sense and sound business judgment of the Trustee and her experienced counsel.  This Court has the duty of canvassing the issues and approving a settlement agreement where it finds that the agreement does not fall below the lowest point in a range of reasonableness and would be in the best interest of creditors of the estate.  For the reasons more fully detailed below, the Court approves the proposed Agreement, resolving a decade of litigation between the Debtor and the Knopfs.

## I.      BACKGROUND

### A.      General

On September 12, 2018, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  (ECF Doc. # 1.)  On November 19, 2018, the Court entered an order converting the Debtor's Chapter 11 bankruptcy case to a Chapter 7 case.  (ECF Doc. # 33.)  Deborah J. Piazza was appointed as the interim Chapter 7 trustee of the Debtor's estate and is now the permanent Trustee of the Debtor's estate and continues to serve in such capacity.  (Motion ¶ 9.)

The Debtor is the fee owner of three separate condominium units known as Unit #1, Unit #2 and Unit #4 at 10 Bedford Street, New York, New York (the "Condominium Units").  (*Id.* ¶ 10.)  The Condominium Units are now subject to a judicial lien created by the Judgment against the Debtor in favor of the Knopfs in the amount of $9,867,832.61.  (Agreement at 22.)  The Agreement would provide the Knopfs' with a quitclaim deed to the Condominium Units in exchange for $200,000.00 and an agreement that the Knopfs would not receive further distributions from the Debtor's estate, despite their Judgment against the Debtor.

Pursuit is a Delaware limited-liability company; Sanford owns 100% of its membership

interests.  In the state court actions between the Knopfs, Pursuit and Sanford—which are more

fully discussed below—the state court determined that the Pursuit's affairs were intermingled

with Sanford's to the degree that Sanford should be held personally liable for the previous

judgment debt owed to the Knopfs.  February 4 Decision and Order at 12.  That Decision and

Order provides the following helpful description of the parties:

> The District Court found, based on the relevant facts and applicable law,
> that Sanford repeatedly conceded on the record that Pursuit's assets are
> the same as his; that Pursuit is a disregarded entity for tax reporting
> purposes; that Sanford used Pursuit's bank accounts to pay his own
> litigation expenses; that Sanford and Pursuit operated as a single entity and
> that he continued to treat Pursuit as interchangeable with himself; that
> Sanford used Pursuit's corporate form to shield himself from personal
> liability in connection with the loans borrowed in the acquisition of the
> real-estate properties; and that he refused to give the Knopfs any mortgage
> interests in the properties, even though the underlying agreements obligated
> him to do so.  These findings resemble the assertions the Knopfs make
> against Sanford in this proceeding.

February 4 Decision and Order at 10-11 (internal citations omitted).[2]

## B.    Overview of Litigation Between Debtor and the Knopfs

### 1.    *State Court Judgment Against Pursuit in the Amount of $9,867,832.61*

In 2009, the Knopfs commenced a lawsuit in the Supreme Court of the State of New York,

County of New York.  The Knopfs moved for summary judgment but the trial court denied the

motion; the Knopfs appealed.  The Appellate Division, First Department, reversed and awarded

partial summary judgment to the Knopfs against Pursuit for breach of contract.  *See Knopf et al. v.

Sanford, et al.*, 123 A.D. 3d 521, 521 (N.Y. App. Div. 2014).  The decision did not quantify the

amount of damages, and the case was remanded to the trial court.  *Id.*

---

[2]    The reference to the District Court in the February 4 Decision and Order is to the Opinion and Order of
Judge Denise Cote of the U.S. District Court for the Southern District of New York in *Knopf v. Phillips*, 2017 WL
6561163, at *11–13 (S.D.N.Y. Feb. 1, 2018.)

The trial court referred the matter of damages for hearing and recommendation to retired Supreme Court Justice, Judicial Hearing Officer Ira Gammerman (hereinafter "JHO" or "JHO Gammerman"). After a 5-day hearing and extensive briefing, the JHO recommends "[T]he amount due from Mr. Sanford individually totals $10,937,850, and of that amount, Sanford and Pursuit are jointly liable for the $8,336,488 . . . ." (JHO Hearing Transcript, ECF Doc. # 60-5, at 12:17–20.)

The Knopfs moved to confirm the JHO's report and recommendation in the New York State Supreme Court. Justice Lebovits upheld the damages recommended with respect to Pursuit. *See Knopf v. Sanford*, No. 113227/09, 2018 WL 1769299, at *35–44 (N.Y. Sup. Ct. Feb. 9, 2018). Justice Lebovits found that "JHO Gammerman calculated interest on the two loans properly." *Id.* at *41. Justice Lebovits also confirmed JHO Gammerman's recommendation of the damages Pursuit owed to the Knopfs, but he denied JHO Gammerman's recommendation with respect to damages against Sanford personally, concluding that JHO Gammerman had exceeded the scope of the referral. *Id.* at *43. Justice Lebovits' decision specifically states:

> ORDERED that judgment be entered for plaintiffs and against Pursuit Holdings LLC in the amount of $8,336,488, with interest from February 8, 2016 at the statutory rate until entry of judgment, as calculated by the Clerk, together with costs and disbursements, as taxed by the Clerk[.]

*Id.* A judgment was subsequently entered on February 22, 2018 in favor of the Knopfs against Pursuit in the amount of $9,867,832.61 (the amount previously defined as the Judgment). (*See* Motion ¶ 14.)

### 2.    *The Knopfs Veil Piercing Action*

In 2018, the Knopfs filed an additional state court action against Pursuit and Sanford. *Knopf v. Sanford*, No. 652743/2018 (N.Y. Sup., N.Y. Cty. Feb. 4, 2018). The Knopfs sought an order and judgment holding Sanford personally liable for the Judgment debt in the prior state

7

court action. *Id.* Justice Lebovits' February 4 Decision and Order found that Sanford should be

held personally liable for Pursuit's judgment debt owed to the Knopfs based on an alter-ego or

veil-piercing theory. *Id*. As already stated, a Judgment against Sanford for $10,363,402.99 was

entered on March 6, 2019. *See* Judgement at 1–2, *Knopf v. Sanford*, Index No. 652743/2018

(N.Y. Sup. Ct. Mar. 6, 2019), Doc. No. 177.

3.    *Additional Federal Court Litigation*

The Knopfs also commenced three actions in the United States District Court for the

Southern District of New York against Pursuit, Sanford, the lawyers that represented Pursuit and

Sanford in the state court actions, and the buyer of the Condominium Units. The first action,

against Meister, Seelig & Fein and Pursuit, was dismissed. The dismissal of the case was

affirmed by the Second Circuit. In the remaining two Southern District actions, the *Esposito* and

*Phillips* actions, Judge Denise Cote dismissed both cases, and also entered substantial sanctions

against the Knopfs and their counsel. *See Knopf v. Esposito*, 2017 WL 6210851 (S.D.N.Y. Dec.

7, 2017) (dismissing Knopfs' sole federal claim against defendants and declining to exercise

supplemental jurisdiction over state law claims); *see also Knopf v. Esposito*, 2018 WL 1226023

(S.D.N.Y. Mar. 5, 2018) (granting, in part, sanctions against the Knopfs and their counsel); *see*
*also Knopf v. Phillips*, 2018 WL 1320267, at *3 (dismissing case with prejudice); *see also*

February 4 Decision and Order at 10–11 (providing a helpful summary of the District Court

actions). The Knopfs have appealed these two cases to the Second Circuit, but the appeal is

stayed because of the automatic stay in the Pursuit bankruptcy. Both the *Esposito* and *Phillips*

cases arose from alleged misconduct by Sanford in causing an Appellate Division, First

Department Court Attorney to commit misconduct. Sanford believes the results of the two federal

court actions somehow show that he is blameless of any of the misconduct the Knopfs allege that

Sanford engaged in.  All three actions are briefly described below.  Judge Cote's decision imposing sanctions on the Knopfs and their counsel shows that their federal court litigation conduct was improper.[3]  But Justice Lebovits' February 4 Decision and Order, discussed above, shows that Sanford's state court conduct was improper.  While the Court briefly describes the three cases, they are not relevant to the issues decided by the Court on the pending Motion.

a)  The *Esposito* Action

The complaint in *Esposito* named several attorneys and Sanford as defendants.  Complaint at 1, *Knopf v. Esposito*, Case No. 1:17-CV-05833-DLC (S.D.N.Y. Aug. 2, 2017), ECF Doc. # 1.  The Knopfs alleged that Sanford conspired, in violation of 42 U.S.C. § 1983, with three attorney defendants and others to obtain "an ex parte advisory opinion" from a court attorney employed by the Appellate Division, First Department.  They also alleged claims of fraud and deceit, fraudulent conveyance, and violation of New York Judiciary Law § 487 arising out of these same events.  *See Knopf v. Esposito*, No. 17-CV-5833 (DLC), 2017 WL 6210851, at *1 (S.D.N.Y. Dec. 7, 2017).  The defendants moved to dismiss the first amended complaint, and the defendants' motions to dismiss were granted.  *Id.*

b)  The *Phillips* Action

On August 22, 2016, the Knopfs filed their complaint commencing the *Phillips* action.

---

[3]      The Knopfs' counsel surreptitiously videotaped Sanford's deposition and lied repeatedly about doing so.  For this and other misconduct, Judge Cote imposed sanctions under 42 U.S.C. § 1988 and 28 U.S.C. § 1927, jointly and severally, against the Knopfs and their counsel for bad faith, vexatious, and duplicative litigation.  *Knopf v. Esposito*, 2018 WL 1226023, at *8.  Judge Cote also granted attorneys' fees and sanctions against the Knopfs' counsel individually under the Court's inherent power for his "bad faith, harassing conduct throughout this litigation."  *Id.* at *7.  Judge Cote also sanctioned the Knopfs and their counsel for allegations that Sanford's employee Esposito contrived to get a First Department Court Attorney (who was Esposito's wife) to provide an *ex parte* opinion that enabled Sanford to close the sale of the Condominium Units and avoid escrowing the $3 million sale proceeds.  Judge Cote vacated this sanction award with respect to Esposito and reduced the sanctions jointly and severally against the Knopfs and their counsel in favor of Dorsey & Whitney after an investigation by the New York Office of Court Administration determined that Esposito's wife had indeed improperly provided an *ex parte* opinion.  *Knopf v. Esposito*, 2018 WL 3579104.  Justice Lebovits's February 4 Decision and Order sheds additional light on this unsavory episode.  February 4 Decision and Order at 7–12.

Complaint at 1, *Knopf v. Phillips*, No. 1:16-CV-06601-DLC-SN (S.D.N.Y. Aug. 22, 2016), ECF

Doc. # 1.  The complaint named Michael Phillips and Pursuit as defendants.  *Id.*  Phillips

purchased three Condominium Units from Pursuit for $3 million dollars.  The sale proceeds were

originally deposited in escrow, as ordered by a single Justice of the Appellate Division, First

Department, and then released from escrow after the Court Attorney (Esposito's wife) provided

an *ex parte* advisory opinion that the order requiring that the funds be deposited in escrow was

vacated when the First Department denied a preliminary injunction.  Although he was not named

in the complaint, Sanford appeared and requested to be added to the case as a defendant.  *Knopf v.

Phillips*, No. 16-CV-00601 (DLC), 2018 WL 1320267, at *1 (S.D.N.Y. Feb. 1, 2018).  The

District Court dismissed the action against all defendants.

c)  The Meister, Seelig & Fein Action

The Knopfs brought a federal diversity action against the Debtor and its past attorneys,

Meister, Seelig & Fein LLP ("MSF").  *See Knopf v. Meister, Seelig & Fein, LLP*, No. 15-CV-

5090 (DLC), 2016 WL 1166368, at *1 (S.D.N.Y. Mar. 22, 2016).  Pursuit retained MSF to defend

it in the Knopfs' 2009 state court action.  *Id.*  As payment for MSF's legal services, MSF and

Sanford entered into an amended engagement agreement whereby Sanford, on behalf of Pursuit

and other entities owned by Sanford, agreed to mortgage another property owned by Pursuit

Holdings at 44 East 67th Street, Unit PHC ("PHC") in favor of MSF.  *Knopf v. Meister, Seelig &

Fein LLP*, 721 F. App'x 96, 97 (2d Cir. 2018).  Pursuit then executed a promissory note for

MSF's payment and a mortgage against PHC in favor of MSF securing the note.  *Id.*  The Knopfs

argued that the mortgage and promissory note constituted actual and constructive fraudulent

conveyances.  *Id.*  The District Court dismissed the constructive fraudulent conveyance claim on

summary judgment and the Second Circuit affirmed the dismissal.  *Id.* at 98.  The District Court

10

also dismissed the Knopfs' actual fraudulent conveyance claim on a Rule 12(b)(6) motion, and the Second Circuit affirmed the dismissal. *Id.*

### C.    Trustee's Proposed Settlement with Knopfs

If the January 7, 2019 settlement is approved, the Agreement would result, *inter alia*, in the following: (i) the Knopfs would pay the Trustee $200,000.00 in cash, (ii) the Knopfs would waive the multi-million dollar Judgment they hold against the Debtor's estate in exchange for the Trustee providing them quitclaim deeds to the Properties, (iii) the Agreement would resolve possible future disputes between the Knopfs and the Debtor's estate, (iv) the settlement payment would result in a certain recovery for the Debtor's unsecured creditors, and (v) the Agreement would preserve other parties' rights with respect to the pending state and federal court litigation. (Motion ¶ 1.)

The salient terms of the Agreement are summarized as follows:[4]

    a.    Within two (2) business days from the execution of the Agreement, the Knopfs shall pay the estate the sum of $200,000.00 (the "Settlement Payments") and the Settlement Payments shall become property of the Debtor's bankruptcy estate upon the approval of the Agreement by the Court (the "Effective Date").

    b.    Within three (3) business days of the Effective Date, the Trustee shall execute and deliver quitclaim deeds for each of the Condominium Units to Delphi Capital Management LLC.

    c.    On the Effective Date, the Knopfs shall have waived any further distributions from the bankruptcy estate except for the deeds for the Condominium Units and the Trustee shall withdraw the notice of appeal of the Judgment.

    d.    Mutual releases are exchanged between the Knopfs and the Trustee releasing all claims except that if the Knopfs prosecute a third-party action which results in the return of any real or personal property to the Debtor's estate, the Knopfs legal and equitable rights to submit a claim for the distribution for all or a portion of such return of property shall be preserved.

---

[4]    Undefined capitalized terms are defined in the Agreement.

    e.   To the extent necessary, the Knopfs shall be granted relief from automatic stay imposed by section 362 to permit the continuation of the State Court Action, the Veil Piercing Action, the Phillips Action, the Esposito Action, the Third Party Discovery[5] and any third-party claims (i.e. claims against entity other than the Debtor that may be jointly liable or liable as accessories for the damages underlying the Judgment). The relief from stay is limited such that in the event a judgment is obtained, the Knopfs are required to notify the Trustee and at that point the Trustee and the Knopfs will attempt in good faith to determine whether further relief from stay is warranted and seek approval of the Court of any resolution of those issues at such times.

    f.   The settlement only involves the Knopfs and the Debtor and does not involve the Debtor's co-defendants in the State Court Action. The Knopfs and any other parties in the State Court Action retain any rights and can continue to prosecute and/or defend the State Court Action. Only the claims between the Knopfs, on the one hand, and the Debtor and its estate, on the other, are resolved by this settlement.

(Motion ¶ 24.)

The settlement, if approved, will enable the Trustee to satisfy what she believes to be the outstanding administrative expense claims of the Chapter 11 and Chapter 7 cases. (Motion ¶ 34.) The bar date was March 1, 2019. The Claims Register shows that filed claims, excluding claims filed by the Knopfs and Sanford, are approximately $330,000. Although at this point the Trustee represents that she cannot determine the amount of allowed claims based upon the Debtor's schedules, she anticipates that there can be a meaningful distribution to the general unsecured creditors. (*Id.*) Importantly, the settlement enables the unsecured creditors to recover a meaningful distribution in a case where, absent vacatur of the Judgment or a reversal of the Judgment on appeal, there would be no recovery for unsecured creditors. (*Id.*) Finally, the

---

[5]    The Agreement defines Third Party Discovery as follows: "following entry of Judgment, the Knopfs served deposition and/or document subpoenas upon Michael Hayden Sanford, Nathaniel H. Akerman, Dorsey & Whitney, LLP, James M. McGuire and JPMorgan Chase Bank for the purpose of obtaining discovery relating to potential claims against parties the Knopfs may allege to be jointly liable or liable as accessories for the damages underlying the Judgment and intend to serve additional subpoenas for that purpose (the "Third Party Discovery")." (Agreement at 22.)

settlement resolves millions of dollars of claims asserted by the Knopfs as embodied in the Judgment.

### D.        Objections to the Settlement

Pursuit's lawyer filed an opposition to the Trustee's Motion (ECF Doc. # 51). Sanford filed a declaration in opposition. (ECF Doc. # 53.) Both oppositions assert, *inter alia*, that the Trustee is violating her fiduciary duty to the estate by seeking to settle through the Agreement rather than continuing to pursue litigation with the Knopfs.

There are no other objections to the settlement. A limited response was filed by the NYCTL 2017-A Trust and the Bank of New York Mellon, as Collateral Agent and Custodian for the NYCTL 2017-A Trust (collectively, the "Tax Lien Trust"). (ECF Doc. # 52.) The Tax Lien Trust does not object to the settlement or to the transfer of the Condominium Units from the Debtor's Estate to Delphi Capital Management. (*Id.*) Rather, the limited reply requests that, to the extent that the Tax Liens are not paid prior to or at the time of the transfer of the Condominium Units, the Tax Liens will remain as liens against the Condominium Units and, to the extent not otherwise paid by the Trustee, will survive this Chapter 7 Bankruptcy. (*Id.*)

## II.        <u>LEGAL STANDARD</u>

Bankruptcy Rule 9019 governs this Court's approval of compromises. There is a strong policy favoring settlements and compromises in bankruptcy cases as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). Indeed, the general rule is that Courts should approve settlements unless they "fall below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In*

*re Chemtura Corp.*, 439 B.R. 561, 54 (Bankr. S.D.N.Y. 2010) (quoting *In re W.T. Grant, Co.*,

699 F.2d 599, 608 (2d Cir. 1983)).

Rule 9019(a) provides authority to approve a compromise upon the motion of the trustee.

Specifically, Rule 9019 provides:

> On motion by the trustee and after notice and a hearing, the court may
> approve a compromise or settlement. Notice shall be given to creditors, the
> United States trustee, the debtor, and indenture trustees as provided in Rule
> 2002 and to any other entity as the court may direct.

FED. R. BANKR. P. 9019.

To approve a compromise under Rule 9019, the Court must determine that the settlement

is fair, equitable, and in the best interests of the estate.  *See In re Drexel Burnham Lambert Grp.,*

*Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citing *Protective Comm. for Indep.*

*Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)); *see also*

*Topwater Exclusive Fund III, LLC v. SageCrest II, LLC (In re SageCrest II, LLC)*, Nos. 3:10-cv-

978 (SRU), 3:10-cv-979 (SRU), 2011 WL 134893, at *8–9 (D. Conn. Jan. 14, 2011); *Cousins v.*

*Pereira (In re Cousins)*, No. 09 Civ. 1190 (RJS), 2010 WL 5298172, at *3 (S.D.N.Y. Dec. 22,

2010); *In re Chemtura Corp.*, 439 B.R. 593–94; *In re Lehman Bros. Holdings, Inc.*, 435 B.R.

122, 134 (S.D.N.Y. 2010).  In making its determination, the Court must independently evaluate

the settlement's reasonableness rather than simply deferring to the debtor or debtor in

possession's judgment.  *See Chemtura*, 439 B.R. at 594; *In re Rosenberg*, 419 B.R. 532, 536

(Bankr. E.D.N.Y. 2009).  However, in making an independent evaluation of the reasonableness

of the settlement, the court is *not* required to conduct a trial of the underlying claims and may

take into consideration the opinions the bankruptcy counsel, trustees, and other parties in interest.

*See Chemtura*, 439 B.R. at 594; *In re Rosenberg*, 419 B.R. at 536.

14

The Second Circuit explained the examination required as follows:

> In undertaking an examination of the settlement, we emphasize that this responsibility of the bankruptcy judge, and ours upon review, is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement "fall[s] below the lowest point in the range of reasonableness," *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied, sub nom. Benson v. Newman*, 409 U.S. 1039 (1972).

*Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *see also Anaconda-Ericsson, Inc. v. Hessen (In re Teltronics Services, Inc.),* 762 F.2d 185, 189 (2d Cir. 1985); *In re Lion Capital Group*, 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985); *In re Carla Leather, Inc.,* 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984).

While neither Rule 9019 nor any section of the Bankruptcy Code set forth explicit factors for courts to consider in settlement approval decisions, it is well-established that courts routinely apply a set of factors outlined by the Second Circuit. Utilizing the Supreme Court's *TMT Trailer Ferry* framework, the Second Circuit in *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) outlined a test for evaluating whether to approve a settlement. The court instructed that seven non-exclusive factors should be considered to the extent applicable in the circumstances:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement;" (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors;" and (7) "the extent to which the settlement is the product of arm's length bargaining."

*Id.* (internal citations omitted) (hereinafter, "*Iridium* Factors").

When assessing these factors, the Court need not determine that all factors weigh in favor of approval nor must it find that the proposed compromise is even the best agreement that could have been achieved in the circumstances. *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159–60. Rather, the Court is to determine whether the "settlement as a whole is fair and equitable," *In re Lee Way Holding Co.*, 120 B.R. 881, 890 (Bankr. S.D. Ohio 1990), and falls "within the reasonable range of litigation possibilities." *In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (citation omitted).

## III.    DISCUSSION

### A.    *Iridium* Analysis

The Court has considered the *Iridium* Factors to the extent applicable in the circumstances. These factors weigh in favor of granting the Motion.

> **1.** *The balance between the litigation's possibility of success and the settlement's future benefits*

This factor weighs heavily in favor of the Agreement. There is no doubt that the Agreement will benefit the estate by producing a recovery for the estate's unsecured creditors—without the settlement, the Trustee and her counsel believe there would be no recovery for creditors. Additionally, the Trustee notes that if the settlement is not approved, she would have to either (1) move under CPLR 5015 for relief from the Judgment against the estate or (2) perfect an appeal from the existing Judgment *and succeed* on the appeal. (Motion ¶ 37.) The Trustee believes that her chances of success in appealing the Judgment are unlikely. (*Id.*) After reviewing the lengthy state and federal court history of the Debtor and the Knopfs discussed above, this Court agrees that the settlement's future benefits outweigh the litigation's possibility

of success, if continued.  This factor, therefore, weighs in favor of the Court's acceptance of the

Agreement.

>    2.    *The likelihood of complex and protracted litigation, with its attendant*
>          *expense, inconvenience, and delay, including the difficulty in collecting on the*
>          *judgment*

The prospect of complex and protracted litigation is considered an especially important

factor in the context of bankruptcy.  *O'Connell v. Packles (In re Hilsen)*, 404 B.R. 58, 75 (Bankr.

E.D.N.Y. 2009).  The *Hilsen* court explained that, while the likelihood of complex and protected

litigation factor is "always a factor in considering the merits of a settlement, it is of particular

consequence in the bankruptcy context, where the prompt administration of a bankruptcy estate,

for the benefit of the debtor and creditors alike, is among a trustee's central objectives."  *Id*.  The

Trustee believes that continuing the litigation as requested by the Debtor and Sanford would

likely take more than a year.  (Motion ¶ 40.)  Since the litigation between the Knopfs and

Sanford has already spanned a decade with no end in sight, it is indeed foreseeable that many

years of additional litigation lay ahead.  The Trustee believes that, even if litigation were

continued by perfecting a notice of appeal of the Judgment, the likelihood of the payoff from that

litigation would be uncertain at best.  (*Id.*)  The Trustee believes that any successes that would

result from continued litigation would only modestly offset the existing Judgment, at best.  At

worst, continuing litigation could prevent the unsecured creditors from obtaining a payout.  (*Id.*)

Because the unsecured creditors would receive a certain payout under the Agreement, this factor

weighs in favor of the Court accepting the Agreement.

    3.   *The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object or affirmatively support the proposed settlement*

The paramount interest of creditors is served by the Agreement. As noted at the outset of this decision, no creditors have objected to this settlement. The only individual who has objected to the substance of the settlement is Sanford. Moreover, as noted in reference to the above factor, the unsecured creditors would receive a certain payout under the Agreement. Since unsecured creditors are better off under the agreement and secured creditors are not affected, this factor weighs in favor of the Court's approval of the Agreement.

    4.   *Whether other parties in interest support the settlement*

This bankruptcy case is little more than a two-party dispute which ended up in Bankruptcy Court after a decade of state court litigation. Sanford, who owns 100% of the membership interests in Pursuit, objects to this proposed settlement. Obviously, the Knopfs, the estate's largest creditor, and the parties to the settlement are in favor of approval of the settlement. (Motion ¶ 42.) Additionally, the Trustee has submitted that she believes the settlement will work in favor of all non-insider unsecured creditors. (Motion ¶ 42.)

    5.   *The competency and experience of counsel supporting the settlement*

The Trustee is represented by competent bankruptcy counsel who carefully analyzed the merits of the claims versus the risks and defenses. Tarter Krinsky & Drogin LLP ("TKD") has handled numerous Chapter 7 trustee representations (and Chapter 11 cases on behalf of debtors in possession and creditors committees). A significant portion of TKD's day to day work relates to the prosecution of various causes of action for the benefit of unsecured creditors in an estate. Both the Trustee and TKD spent considerable time conducting due diligence in weighing the likelihood of success in litigation against the benefits under the Agreement. (Motion ¶ 44.)

Additionally, Trustee's counsel reviewed all of the hundreds of pages of documents submitted to the Trustee and this Court by Sanford. (Motion ¶ 8.)

### 6. The nature and breadth of releases to be obtained by officers and directors

The Agreement includes customary releases and waivers of claims that were or could have been asserted by the Debtor and its estate against the Knopfs, and vice versa. The mutual releases between the parties are tailored to release only the estate's claims. (Motion ¶ 45.) Sanford is the only director, officer, or member of the Debtor. He maintains his right to pursue any individual claims against the Knopfs. This factor is therefore not entirely relevant to the Agreement, but it would also favor approving the Agreement.

### 7. The extent to which the settlement is the product of arm's length bargaining

The Agreement is the product of arm's length bargaining between the Trustee's counsel and counsel to the Knopfs. (Motion ¶ 46.) Pursuit's counsel argued at the hearing that the Trustee may not have given Pursuit's arguments in favor of continued litigation sufficient consideration. However, upon further questioning, Pursuit's counsel admitted that it would be fair to say that the Trustee considered all of the arguments in favor of continuing litigation and nonetheless found that the Agreement was the best course of action for the estate. ("Hearing Tr.," ECF Doc. # 65, at 39:13–21) Thus, there is no evidence refuting the Trustee's representations that she, her counsel, and the Knopfs' counsel reached the Agreement through arm's length, proper negotiations. No evidence suggests that the Trustee or her counsel failed to give due consideration to arguments in favor of continuing litigation on behalf of the Debtor. As a result, this factor weighs in favor of the Agreement.

In sum, the *Iridium* Factors weigh heavily in favor of approving the Agreement. The Court has sufficiently canvassed the issues and considered each factor. The Court concludes on

the basis of the *Iridium* Factors that the Trustee's Motion to approve the Agreement should be granted.

### B.        Trustee's Business Judgment

As noted above, the Court may give consideration to the informed judgments of the Trustee and Trustee's counsel. In *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. at 505, the court observed:

> Further, the court need not conduct a wholly independent investigation in formulating its opinion as to the reasonableness of a settlement. We may give weight to the informed judgments of the trustee or debtor-in-possession and their counsel that a compromise is fair and equitable, *see*, *In re Carla Leather. Inc.*, 44 B.R. 457 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985), and consider the competency and experience of counsel who support the compromise. *See*, *In re Texaco*, 84 B.R. 893 (Bankr. S.D.N.Y 1988); *In re International Distribution Centers. Inc.*, 103 B.R. 420 (S.D.N.Y. 1989). And indeed, a court may approve a settlement even if it believes that the trustee or debtor-in-possession ultimately would be successful at trial. *ln re Teltronics Services, Inc.,* 46 B.R. 426 (E.D.N.Y 1984), *aff'd,* 762 F.2d 185 (2d Cir. 1985). Finally, we must consider the principle that "the law favors compromise." *In re Blair*, *supra,* 538 F.2d at 851.

Pursuit's counsel argues that the Trustee should continue litigation on behalf of the Debtor. However, the law provides that the Trustee has "a substantial degree of prosecutorial discretion" when determining whether to bring a cause of action or not. *In re V. Savino Oil & Heating Co., Inc.*, 91 B.R. 655, 656 (Bankr. E.D.N.Y. 1988); *see also In re Smith,* 400 B.R. 370 (Bankr. E.D.N.Y. 2009) (denying motion to reopen bankruptcy case to pursue an adversary proceeding against Chapter 7 trustee for malpractice, breach of fiduciary duty and negligence where the trustee had exercised his business judgment in declining to go forward with claims); *In re Consol. Indus. Corp.,* 330 B.R. 712, 715 (Bankr. N.D. Ind. 2005) (stating that a "bankruptcy trustee is not required to prosecute every cause of action belonging to the bankruptcy estate. Instead, the trustee is given a substantial degree of discretion in deciding

how best to administer the estate committed to his care and his actions are measured by a business judgment standard.") (internal citations omitted). Moreover, courts "will not entertain objections to the trustee's management of the debtor's estate where the trustee's conduct involves [her] good faith business judgment, is made on a reasonable basis, and is within the scope of the trustee's authority under the Code." *In re Belmonte,* 524 B.R. 17, 29 (Bankr. E.D.N.Y. 2015) (quoting *In re Taub,* 441 B.R. 211, 216 (Bankr. E.D.N.Y. 2010)).

Pursuit's arguments that the Trustee in any way abused her discretion in recommending the proposed settlement agreement are baseless. In addition to all of the representations in the Trustee's Motion and the arguments of the Trustee's counsel at the hearing, the Trustee and her counsel reviewed all of the voluminous documents they received from both Pursuit and Sanford. (*See* Reply ¶ 8 stating "Sanford provided hundreds of pages of documents to the Trustee's counsel and all were reviewed"; *see also* "Trustee's Affirmation," ECF Doc. # 49, *passim*; Hearing Tr. at 39–40.)[6] The Court, therefore, has no valid reason to question the Trustee's affirmations under oath or her business judgment on the issue of whether she reached the proposed settlement in good faith, in an arm's length negotiation, and based upon a thorough consideration of all facts and alternatives.

## IV.   <u>CONCLUSION</u>

For these reasons, the Court grants the Trustee's Motion to approve the Agreement. The *Iridium* Factors weigh in favor of the settlement, and these factors, alone, provide a sufficient

---

[6]      During the hearing, the Court asked "Is it fair to say colloquially . . . You took your best shot. You laid out to [the Trustee] and her counsel all of the reasons why you believed that the trustee should litigate rather than settle. Is that a fair statement?" (Tr. 39:13-20.) Debtor's counsel responded "yes," and when the Court further inquired that the result was that the "trustee wasn't persuaded," Mr. Osborne asserted that his concern was essentially that the Trustee had not given the settlement "her best effort." (Tr. 40:1-7.) The basis of that claim was not only unsubstantiated by facts, but also is legally irrelevant where the Court is entitled to give weight to the business judgment of the Trustee.

basis for the Court to approve the settlement.  The arguments by Pursuit and Sanford that the

Trustee failed to exercise appropriate business judgment are unpersuasive.

**IT IS SO ORDERED.**

Dated:    March 12, 2019
          New York, New York

_Martin Glenn_

MARTIN GLENN
United States Bankruptcy Judge